OPINION OF THE COURT
Wachtler, J.
The question on this appeal is whether the plaintiff, Marine Midland Bank can claim the status of a holder in due course of a check which it cashed without indorsement and stamped “credited to the áccount of the payee herein named”, although the payee, who had presented the check, had no account at the bank. By a divided court the Appellate Division held that the bank had properly supplied the missing indorsement pursuant to subdivision (1) of section 4-205 of the Uniform Commercial Code and was otherwise a holder in due course. The defendant appeals on the basis of the dissent claiming primarily that the bank could not supply the missing indorsement because the payee was not a customer of the bank within the meaning of the statute; that if the bank could supply the indorsement it did not supply a proper indorsement, and if the indorsement was effective the bank did not give value because it did not pay consistent with the indorsement.
The facts are not disputed.[1] The defendant is a Jamestown law firm which in 1978 and 1979 represented clients in connection with construction contracts to be performed by Leo Proctor Construction Company, Inc., a Texas corporation. Pursuant to the contracts Proctor was to construct four Pizza Hut restaurants in New York, and was to receive progress payments for completed work.
On January 3, 1979 the defendant made a progress payment on behalf of its clients by drawing and delivering two checks totaling $36,906.54. The checks were made *223 payable to Proctor as the named payee and had been drawn by the defendant on a trust account it maintained for disbursement of client’s funds at the First National Bank of Jamestown.
On January 4, 1979 a Proctor employee brought these two checks to one of the plaintiff’s branch offices at Jamestown and presented them to the manager with a request that the funds represented by the checks be wire transferred to an account maintained by Proctor at the First National Bank of Bethany in Oklahoma. The checks were not indorsed by Proctor. However, an employee of the plaintiff bank stamped the reverse side of the checks “credited to the account of the payee herein named/Marine Midland Chautauqua National Bank” and then wire transferred the funds to Proctor’s account at the Oklahoma bank. Proctor has never maintained an account with the plaintiff bank.
After the defendant law firm delivered the checks to Proctor it was informed by one of its clients that Proctor was in default on the construction contracts and, at the client’s request, stopped payment on the checks. Thus when the checks reached First National they were stamped “Payment stopped” and were returned to the Oklahoma bank which returned them to the plaintiff.
The plaintiff made a timely demand for payment of the checks by Proctor but was informed that Proctor had filed a petition in bankruptcy. The plaintiff then made a timely demand for payment by the defendant, but the defendant refused to honor the checks. It is conceded that the plaintiff had no knowledge of Proctor’s default on the construction contracts at the time it took the checks.
It is also noted in the agreed statement of facts that the defendant had previously made six progress payments to Proctor commencing in August, 1978. These checks had been accepted by the plaintiff and, at Proctor’s request, the funds were wire transferred to one of Proctor’s accounts in another bank in Oklahoma or Texas. On five occasions the checks were indorsed by Proctor. In the other case the plaintiff had stamped the check as having been credited to Proctor’s account. Every one of these checks had been honored by the defendant.
*224 It also appears that the plaintiff had been cashing some of Proctor’s payroll checks at this particular branch in Jamestown. These checks had been drawn on Proctor’s account in either the Oklahoma or the Texas bank, and were presented to the plaintiff by Leo Proctor and Proctor employees. On the first occasion in May of 1978 the plaintiff’s branch manager had called the Texas bank and determined that Proctor’s credit was good. Each check presented by Leo Proctor in person was cashed only after the plaintiff had confirmed that there were sufficient funds in the account at the drawee bank. In one instance plaintiff refused to cash the check after learning that the funds were insufficient. On another occasion, in the summer of 1978, a check presented by a Proctor employee had been returned for insufficient funds after the employee had been permitted to withdraw against the uncollected funds. This check was being held by the plaintiff’s manager on January 3, 1979.
The parties agree that the defendant has a valid defense against Proctor for lack of consideration and thus against the plaintiff, as Proctor’s transferee, unless the plaintiff can qualify as a holder in due course.
Under the Uniform Commercial Code five requirements must be met before a party can obtain the special protections of a holder in due course. The party must be (1) a holder (2) of a negotiable instrument (3) who took it for value (4) in good faith (5) without notice that it is overdue, has been dishonored, or is subject to a defense or claim on the part of another person (Uniform Commercial Code, § 3-302, subd [1]; see, also, White & Summers, Uniform Commercial Code [2d ed], pp 551-552). Although at common law a depositary bank generally could not achieve that status, the Uniform Commercial Code permits it to qualify provided it meets the five general requirements (Hawkland, Depositary Banks as Holders in Due Course, 76 Commercial LJ 124; Marine Midland Bank-New York v Graybar Elec. Co., 41 NY2d 703; Long Is. Nat. Bank v Zawada, 34 AD2d 1016; Uniform Commercial Code, § 3-206, subd [3]).
With respect to the first requirement the code provides that a holder is “a person who is in possession of * * * an *225 instrument * * * issued or indorsed to him or to his order or to bearer or in blank” (Uniform Commercial Code, § 1-201, subd [20]). In this case it is conceded that the bank is in possession of the check but also conceded that the bank accepted the check without indorsement. This would generally preclude a person from being a holder, and thus a holder in due course.
However, the bank contends, and a majority of the Appellate Division agreed, that subdivision (1) of section 4-205 of the Uniform Commercial Code excuses its failure to obtain Proctor’s indorsement. The statute provides: “A depositary bank which has taken an item for collection may supply any indorsement of the customer which is necessary to title unless the item contains the words ‘payee’s indorsement required’ or the like”. The stated purpose of the section is “to speed up collections by eliminating any necessity to return to a non-bank depositor any items he may have failed to indorse” (Uniform Commercial Code, § 4-205, Comment 1). The defendant contends that this section is inapplicable here because Proctor has no account at the bank and thus could not qualify as a depositor.
It appears that this section was designed to facilitate the collection process in the relatively common situation where a person having an account at the bank deposits a check without indorsement (see, e.g., Clark, Bank Deposits, Collections and Credit Cards, § 4.3, p 4-26). By its terms, however, the statute is not limited to that situation. The bank’s statutory authority to supply a missing indorsement applies to any item submitted for collection by “a customer”, which includes not only persons “having an account with a bank” but also anyone “for whom a bank has agreed to collect items” (Uniform Commercial Code, § 4-104, subd [1], par [e]). Thus the fact that Proctor had no account at the bank did not necessarily preclude the bank from supplying the missing indorsement.
The bank urges that Proctor became its customer when it “agreed to collect the checks for Proctor, as it had in the past”. The defendant disputes this characterization of the transaction. It states: “Had the bank been acting as Proctor’s agent for collection, it would have passed the checks through the normal channels and paid Proctor once they *226 had cleared * * * Marine, however, advanced its own funds to Proctor on the assumption that the checks would clear. It therefore was not seeking to collect the checks in Proctor’s behalf, but rather in its own behalf”. It also claims that the prior transactions were of the same character.
The drafters of the Uniform Commercial Code have noted that “Historically, much time has been spent and effort expended in determining or attempting to determine whether a bank was a purchaser of an item or merely an agent for collection” (Uniform Commercial Code, § 4-201, Comment 1). In order to simplify this problem subdivision (1) of section 4-201 of the Uniform Commercial Code establishes a presumption of the bank’s agency status, which prevails unless “a contrary intent clearly appears”. Although this section seems to provide the relevant guidelines for this case, neither of the parties have cited it or addressed themselves to the issues it presents. Nor was the section mentioned or discussed in the opinions at the Appellate Division. However, we need not decide its applicability or effect in this case, because even if it be assumed that the bank was an agent and Proctor a “customer”, the bank’s handling of this transaction does not entitle it to holder in due course status.
If Proctor was the plaintiff’s customer then the plaintiff was entitled to supply the missing indorsement and in our view satisfied that requirement in this case. We find no merit to the defendant’s contention that the “legend” the bank stamped on the reverse side of the check does not constitute an indorsement.[2] On this point the statute expressly provides that “a statement placed on the item by the depositary bank to the effect that the item was deposited by a customer or credited to his account is effective as the customer’s indorsement” (Uniform Commercial Code, § 4-205, subd [1]). Although Proctor did not in fact have an account at the bank capable of being credited that does not *227 impair the effectiveness of the indorsement under the terms of the statute. The section is quite explicit that the statement the bank placed on the check in this case effectively serves as the customer’s indorsement. And as noted earlier, being in possession of an indorsed item would qualify the bank as a holder (Uniform Commercial Code, § 1-201, subd [20]).
However, in order to qualify as a holder in due course the bank must satisfy additional conditions, including a requirement that it give value within the meaning of the code (Uniform Commercial Code, § 3-302, subd [1]). With respect to this requirement the inconsistency between the indorsement and the manner in which the checks actually were paid is significant. On this point the code is equally explicit: “Except for an intermediary bank, any transferee under an indorsement which is conditional or includes the words Tor collection’, Tor deposit’, ‘pay any bank’, or like terms * * * must pay or apply any value given by him for or on the security of the instrument consistently with the indorsement and to the extent that he does so he becomes a holder for value. In addition such transferee is a holder in due course if he otherwise complies with the requirements of Section 3-202 on what constitutes a holder in due course.” (Uniform Commercial Code, § 3-206, subd [3].) Thus, a bank which has made a payment inconsistent with the indorsement cannot be said to have given value for the purpose of claiming the special protections afforded a holder in due course. Furthermore, the statute does not limit the bank’s obligation to pay consistent with a restrictive indorsement, to those cases where the restriction was imposed by the payee. In another context we have held that a bank is bound to observe a restrictive indorsement even when the indorsement was forged (Underpinning & Foundation Constructors v Chase Manhattan Bank, N.A., 46 NY2d 459). The plaintiff’s contention that subdivision (3) of section 3-206 does not apply to a depositary bank which has supplied a restrictive indorsement on its customer’s behalf pursuant to subdivision (1) of section 4-205, finds no support in either statute. Accordingly, inasmuch as the bank did not comply with the conditions of the indorsement which it supplied, it cannot be said to have given value *228 within the contemplation of the code and therefore was not a holder in due course based on that indorsement.
Finally the bank argues that the terms of the indorsement may be disregarded because no indorsement was required. It is urged that the indorsement requirement was meant to prevent a thief or forger from negotiating the instrument and therefore should not be considered necessary when the check has been presented by the named payee.
The code of course does not contain any such generalized dispensation from the indorsement requirement. Even with respect to depositary banks, which are given preferred treatment under subdivision (1) of section 4-205, a customer’s failure to indorse an item must be cured by the bank supplying the indorsement. Although, as the plaintiff notes, some courts have held that this represents a mere formality which should not affect the bank’s status as a holder in due course (see, e.g., Bowling Green v State St. Bank & Trust Co., 307 F Supp 648, affd 425 F2d 81), that holding has been widely criticized (see Clark, Bank Deposits, Collections and Credit Cards, § 4.3, pp 4.26-4.27; Hawkland, Depositary Banks As Holders In Due Course, 76 Commercial LJ, pp 124,127; Note, Bowling Green: The Bank as Holder in Due Course, 71 Col L Rev 302; Note, How Can A Bank Become A Holder and Give Value In Order to Attain Holder in Due Course Status?, 12 Boston Coll Industrial & Commercial L Rev 282), and has been rejected by other courts (see, e.g., United Overseas Bank v Veneers, Inc., 375 F Supp 596). In our view this approach urged by the bank cannot be reconciled with the terms of the applicable statutes or with article 4’s general policy of providing fixed rules, based on sound banking practices, as the best means of insuring the type of predictable results necessary to preserve the free transfer of negotiable instruments. As one commentator has aptly observed “It hardly seems unfair to penalize the bank when it fails to perform such a simple act and then seeks the unusual shelter of the holder in-due-course status” (Clark, op. cit., § 4.3, p 4-29).
Accordingly, the order of the Appellate Division should be reversed, with costs, and judgment granted to the defendant.
*229 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur.
Order reversed, etc.

. The case was submitted directly to the Appellate Division on an agreed statement of facts (CPLR 3222).

. The argument is based in part on the contention that the bank conceded during argument at the Appellate Division that the stamp was not actually an indorsement. The bank makes no such concession on this appeal although, as noted later, it urges that it is not required to supply an indorsement to be a holder and thus should not be bound by the restrictions contained in the indorsement.