## FIRST CITY FEDERAL SAVINGS BANK, Plaintiff,

v.

Anant **BHOGAONKER** and Asha Bhogaonker, Shahab Moghul and Ghulam Moghul, Admed Khan, Mirza Ahmad and Yasmin Ahmad, Hare Patnaik, Ghaiyur Alam, Tahzibul Rizvi, Gautam Pandhi and Chandrika Pandhi, Khurshed Kasad and Zinobia Kasad, Bharat Shah and Bina Shah, Gunvant Shah and Sulochana Shah, Surya Misra and Mishnupriya Misra, Defendants.

Nos. 87 Civ. 5308 (RWS), 87 Civ. 5323 (RWS), 87 Civ. 5331 (RWS) to 87 Civ. 5334 (RWS), 87 Civ. 5337 (RWS), 87 Civ. 5339 (RWS), 87 Civ. 5341 (RWS) to 87 Civ. 5343 (RWS) and 87 Civ. 5390 (RWS).

United States District Court, S.D. New York.

March 31, 1988.

Bizar D'Alessandro Shustak & Martin, New York City (Gayle S. Sanders, Susan C. Stanley, of counsel), for plaintiff.

Richard Simon, Hauppauge, N.Y., for defendants.

## OPINION

SWEET, District Judge.

Plaintiff First City Federal Savings Bank ("First City") has moved for an order pursuant to Fed.R.Civ.P. 56 granting summary judgment in its favor on its consolidated actions against twelve defendants for amounts due on promissory notes in unpaid principal and interest accrued thereon, together with the costs of collection, including reasonable attorneys' fees. Upon the facts and conclusions set forth below, the motion is denied.

*Facts*

The material facts surrounding the making of the promissory notes are not in dispute and are set forth in First City's unrebutted statement pursuant to Rule 3(g) of the Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York. First City is a National Banking Association with its principal office in New York City. The defend-

ants are individual investors from Michigan, New Jersey and Illinois.

Each of the defendants executed a promissory note (the "Note") in favor of First City to obtain a loan for investment in a tax advantaged limited partnership known as Boston Place Associates, Ltd. ("Boston Place"), a real estate syndication of an office building in Tulsa, Oklahoma. In connection with their investments in Boston Place, each defendant also executed a loan application form, a security agreement ("Security Agreement") and a borrower's letter ("Borrower's Letter"). The Security Agreement grants First City a security interest in the borrower's interest in Boston Place and requires the borrower to reimburse First City for all costs and expenses, including attorneys' fees and disbursements, incurred in connection with First City's enforcement of its rights thereunder. The Borrower's Letter authorizes First City to date the Note and pay the proceeds of the loan directly to Boston Place. In addition, the Borrower's Letter contains an acknowledgment by the borrower that First City was acting solely as a lender and not as an investment advisor, had made no attempt to analyze or evaluate the borrower's intended investment in Boston Place, and had made no representation to the borrower to induce him to request the loan.

By the terms of the Notes, each defendant agreed to pay First City the principal sum of the Note in equal, quarterly installments from approximately late 1986 through the end of 1991, together with interest on the unpaid principal sum at an annual rate equal to 2% above First City's reference rate of interest as publicly announced by First City in New York from time to time.[1] The defendants agreed that upon default in payment of any amount due under the Note, the entire amount of the Note would become due and payable without notice or demand. The defendants also agreed to waive the right to interpose any set-off or counter-claim in any action brought under the Note. The Notes provide that they shall be governed by and construed in accordance with the laws of New York State. The Notes also provide that the defendants shall reimburse First City for all costs and expenses, including reasonable attorneys' fees and disbursements, incurred by First City in connection with the enforcement of the defendants' obligations thereunder.

All of the defendants have defaulted in payment of the principal and interest due on their Notes, and First City has declared the entire unpaid balance of the debt due and immediately payable to First City together with all accrued interest to the date of payment, as provided in the Notes.

In opposition to the motion for summary judgment, the defendants have submitted an affidavit by their counsel (the "Simon Affidavit") to which are attached copies of certain documents related to the defendants' investments in Boston Place. According to the affidavit and accompanying documents, Boston Place was sponsored by Forum Companies, Inc. ("Forum"), a corporation that formerly owned a host of subsidiary corporations who acted as general partners and managing agents of various limited partnerships that invested in such ventures as real estate, marinas and oil drilling. Ronald G. Williams ("Williams") was the president of Forum and actively participated in the structuring and solicitation of Forum's limited partnerships. Forum Investment Corporation ("FIC"), a Forum subsidiary, was the general partner of Boston Place. A representative of FIC, Sarah Tovar, coordinated the defendants' subscriptions to Boston Place and applications for loans from First City. Copies of cover letters from Tovar to some of the defendants (the "Tovar Letters") forwarding subscription and finance documents from FIC and First City are attached to the Simon Affidavit.

1. Defendants Bhogaonker, Moghul, Misra, Rizvi, Khan, Bharat Shah and Kasad each executed a Note for the principal amount of $27,000. Defendants Patnaik and Alam each executed a Note for the principal amount of $24,000. Defendants Pandhi and Ahmad each executed a Note for the principal amount of $12,000, and defendant Gunvant Shah executed a Note for the principal amount of $48,000.

Also attached to the Simon affidavit are excerpts from the private placement memorandum ("PPM") pursuant to which units in Boston Place were marketed. The PPM provided, in part:

The Partnership has made arrangements through National Capital Corporation, for each prospective Limited Partner to obtain a loan from First City ... for $27,000 per unit acquired, which loan shall be evidenced by a ... Note bearing interest at the rate of 2% per annum above the prime rate of interest charged from time to time by Chase Manhattan and payable in quarterly installments of principal and interest beginning September 30, 1986 and continuing each quarter thereafter until June 30, 1991, in accordance with the amortization schedule set forth herein.

The PPM provided that all funds contributed by investors would be placed in a special non-interest bearing escrow account with Republic Bank Dallas, N.A. in Dallas, Texas ("Escrow Account") and would be held in trust pending full subscription of the offering. The PPM also provided that, in connection with the purchase of a partnership unit, each financing investor would be required to execute an "Authorization" whereby he authorized (i) Boston Place to present his Note to First City for payment and (ii) First City to deposit the proceeds of the Note in the Escrow Account. If the offering were not fully subscribed by a specified date, the PPM provided that all subscription payments would be returned.

According to the Simon Affidavit and supporting documents, Boston Place was never fully subscribed, but contrary to the terms of the PPM, the investors' subscription funds were never returned. Instead, the defendants' investments were transferred without their consent to The Learning Experience—Boca Raton Associates, Ltd. (the "Learning Experience"), a separate Forum limited partnership which also, it appears, is in financial difficulty. The Simon Affidavit also states that 10% of the proceeds of each investor's loan was paid directly by First City to National Capital Corporation ("NCC"), the entity named in the PPM as responsible for arranging loans

for each investor from First City. A letter dated July 31, 1986 from Thomas Easley, secretary and treasurer of FIC, to First City (the "Easley Letter") contains an authorization from Boston Place for these transfers. It does not appear from the record at this time that these payments to NCC were either disclosed in the PPM or provided for in the Note, Borrower's Letter, Authorization or Security Agreement signed by each investor.

*Summary Judgment on the Notes*

In order to grant summary judgment, this court must determine that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court's responsibility is not to resolve disputed issues of fact, *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), but to determine whether there are any factual issues to be tried, while resolving ambiguities and drawing inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985). Summary judgment enables a court to "streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation." *Knight v. U.S. Fire*, 804 F.2d at 12.

These actions were brought for judgment upon instruments for the payment of money only. Under New York law, proof of the Note and defendants' failure to make payment thereon establishes a *prima facie* case for recovery on the Notes. *Gateway State Bank v. Shangri–La Private Club for Women, Inc.*, 113 A.D.2d 791, 493 N.Y.S.2d 226, 227 (2 Dep't 1985), *aff'd*, 67 N.Y.2d 627, 499 N.Y.S.2d 679, 490 N.E.2d 546 (1986); *Mills v. Ryan*, 41 A.D.2d 689, 342 N.Y.S.2d 889 (4th Dep't 1973), *aff'd*, 33 N.Y.2d 948, 353 N.Y.S.2d 730, 309 N.E.2d 130 (1974). Here, each defendant signed a Note pursuant to which he agreed to pay First City equal installments of principal and interest as provided. The defendants defaulted in payment of

principal and interest due, and First City declared the entire unpaid balance of the debt due and immediately payable together with all accrued interest to the date of payment. Therefore, First City has established a *prima facie* claim on the Notes.

The defendants do not deny the allegations in First City's motion, nor do they deny having executed the Notes. They do not dispute that, as authorized by the Borrower's Letter signed by each defendant, First City disbursed the proceeds of the loans to Boston Place's account. Finally, the defendants do not deny their default in payments of principal and interest under the terms of the Notes.

*Holder in Due Course*

Defendants oppose summary judgment on the grounds that genuine issues of material fact exist as to whether First City is a holder of the Notes in due course.[2] Under the Uniform Commercial Code ("UCC"), a holder in due course is a holder who takes an instrument (1) for value, (2) in good faith, and (3) without notice that it is overdue or has been dishonored or of any other defense or claim against it on the part of another. N.Y.U.C.C. § 3–302(1). As payee under the Notes, First City may be a holder in due course. N.Y.U.C.C. § 3–302(2). There is no dispute that First City gave value for the Notes. Therefore, defendants' challenge to First City's status as a holder in due course turns on First City's lack of good faith or knowledge of a defense to the Notes. *Cf. Chemical Bank v. Haskell*, 51 N.Y.2d 85, 432 N.Y.S.2d 478, 480, 411 N.E.2d 1339, 1340–41 (1980).

 Good faith under U.C.C. § 3–302 is defined by the U.C.C. as "honesty in fact in the conduct or transaction concerned." N.Y.U.C.C. § 1–201(19). In an action brought by a bank to recover amounts due on an outstanding promissory note, the

New York Court of Appeals, noting that this language was intended as a subjective standard, stated:

> the inquiry is not whether a reasonable banker in Chemical's position would have known, or would have inquired concerning the alleged breach by Stanndco of its partnership duties, but rather, the inquiry is what Chemical itself actually knew. If Chemical did not have actual knowledge of some fact which would have prevented a commercially honest individual from taking up the instruments, then its good faith was sufficiently shown.

*Chemical Bank v. Haskell*, 432 N.Y.S.2d at 480, 411 N.E.2d at 1341. Under this subjective standard, the existence of bad faith turns on whether the holder of the note knew that the transaction was suspect. *Sundsvallsbanken v. Fondmetal, Inc.*, 624 F.Supp. 811, 817 (S.D.N.Y.1985). As the Court ruled in *Scarsdale Nat. Bank & Trust Co. v. Toronto–Dominion Bank*, 533 F.Supp. 378, 386 (S.D.N.Y.1982),

> Bad faith, then, represents more than a failure to observe reasonable commercial standards.... [T]he circumstances of which the holder is aware must be such that the failure to inquire signals a desire to evade knowledge because of a belief or fear that the inquiry would reveal a defense. (citation omitted).

Where well-pleaded allegations of bad faith place the subjective knowledge of the holder at issue, summary judgment is rarely appropriate before the opposing party has been given the opportunity to discover what the holder knew at the time it took possession of the note. *See A. David Schwartz, M.D., P.C. Pension Trust v. Mastercraft Indus., Inc.*, 114 A.D.2d 946, 495 N.Y.S.2d 211, 213 (2d Dep't 1985).

---

**2.** If defendants can establish that First City is not a holder of the Notes in due course, the bank will be subject to all claims and defenses against payment on the Notes available pursuant to N.Y.U.C.C. § 3–306, which provides in relevant part:

> Unless he has the rights of a holder in due course any person takes the instrument subject to

> (a) all valid claims to it on the part of any person; and
> (b) all defenses of any party which would be available in an action on a simple contract; and
> (c) the defenses of want or failure of consideration, non-performance of any condition precedent, nondelivery, or delivery for a special purpose ....

*The Simon Affidavit*

Defendants' claim of bad faith rests largely on the Simon Affidavit's allegations with respect to First City's involvement as a lending source for limited partnerships sponsored by Forum and Williams, whose allegedly sharp practices have resulted, according to the Simon Affidavit, in bankruptcy for Forum and a criminal indictment for Williams. Unsupported by affidavits from the defendants or others having personal knowledge of their investment in Boston Place, the Simon Affidavit presents an issue as to the utility of an attorney's affidavit as a vehicle for opposing a motion for summary judgment.

■■■ Fed.R.Civ.P. 56(e) provides that "opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Unsupported assertions in an affidavit sworn by an opposing party's attorney who lacks personal knowledge of the facts do not create genuine issues of material fact to preclude summary judgment. *United States v. Potamkin Cadillac Corp.*, 689 F.2d 379, 381 (2d Cir.1982). This Circuit has held that "[o]nce a moving party has made a showing that no material issues of fact are in dispute, mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion," *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985), and that "disputes over irrelevant facts must not be allowed to obscure the lack of a material dispute (citations omitted), and the party opposing the motion may not stand mute in reliance solely upon its allegations when facing a substantial evidentiary submission refuting its claim." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 923 (2d Cir.1985). Thus, a litigant opposing summary judgment must give some affirmative indication that his version of the facts is not fanciful; a party may not rely on hearsay. *See Schwimmer v. Sony Corp. of America*, 637 F.2d 41, 45 n. 9 (2d Cir.1980); *Ronald Litoff, Ltd. v.*

*American Express Co.*, 621 F.Supp. 981, 984 (S.D.N.Y.1985).

First City objects to the Simon Affidavit on the grounds that it is based largely on hearsay and that its allegations are directed primarily at Williams and his Forum companies. The Simon Affidavit charges Williams with fraud for (1) falsely promising to purchase a Tennessee marina in which defendants had previously invested and thereby to save defendants from deficiency judgments if the defendants invested in Boston Place, (2) failing to return to defendants monies paid and proceeds of the Notes when Boston Place did not close, and (3) transferring defendants' subscriptions to the Learning Experience without defendants' consent. *See* Simon Affidavit ¶s 13–14. First City contends, correctly, that the affidavit fails to set forth any facts that evince either First City's participation in or knowledge of these alleged acts of fraud by Williams.

On the other hand, the Simon Affidavit contains certain assertions for which factual support is found in the Boston Place PPM, the Notes, the Borrower's Letter, the Easley Letter and the Tovar Letters. Therefore, to the extent that such assertions are supported by the record, they will be examined to determine whether they present triable issues of fact that preclude summary judgment at this stage of the litigation.

*Good Faith on the part of First City*

■■ In his affidavit in further support of First City's motion, Richard M. Greenberg, First City's president, contends that the "[d]efendants are in no different position than anyone who takes out a personal loan with any bank, and signs a promissory note." Greenberg Affidavit ¶ 9. The record reveals, however, that these loans arose from a limited partnership offering for which the PPM named First City as a pre-arranged financing source. Moreover, as the Tovar Letters indicate, First City's loan application packages were forwarded to investors together with Boston Place's subscription documents by FIC representatives, who, in turn, assumed the responsibility for returning the executed documents

to First City. As the Security Agreement establishes, First City obtained an interest in each borrower's interest in Boston Place as security for the loans. Finally, as the Borrower's Letter reveals, First City was authorized to pay the proceeds of the loans directly into Boston Place's account, which was held at First City. Thus, despite its attempt to disclaim any involvement in the preparation of the PPM or the structuring of Boston Place, First City has not claimed that it was unaware of the terms of the offering as set forth in the PPM.

The documents submitted in support of and against the instant motion indicate that the actual sales of the Boston Place units and the loans to each investor did not take place in accordance with the terms of the PPM. First, although the PPM provided that the Notes would accrue interest at a rate of 2% per annum above the prime rate charged by Chase Manhattan Bank, the Notes provided that interest would accrue at a rate of 2% per annum above the reference rate publicly announced by First City in New York from time to time. Second, while the PPM provided that loan proceeds would be paid by First City directly into the Escrow Account pending full subscription of the offering, the Borrower's Letter authorized First City to pay the loan proceeds directly to Boston Place. It appears that in fact First City paid the loan proceeds into a Boston Place account at First City and then wired funds from that account to a Boston Place account at Republic Bank which was not the Escrow Account described in the PPM. Third, although neither the PPM nor the Notes, Borrower's Letter or Security Agreement provide for payment of 10% of the loan proceeds to NCC, upon FIC's written instruction First City regularly transferred 10% of each investor's loan proceeds to NCC's account at First City prior to wiring the remaining funds to Boston Place's Dallas bank account.

As to the first two departures from the terms of the offering, First City contends that it never represented to any party that it would charge the interest rate set forth in the PPM or that it would place the loan proceeds in the Escrow Account until the offering had closed. First City points out

that the Borrower's Letter contains an express acknowledgment by each investor that First City "has not participated in the preparation of [the PPM] or similar document and therefore is not responsible for any statement contained in or the completeness of such document." There are no facts in the record so far that would permit the inference that the defendants did not know the nature of the instruments they signed. Finally, the defendants have offered no authority for the proposition that First City's knowledge of the PPM and its willingness to act as a pre-arranged provider of loans permit the inference that it did not receive the Notes in good faith.

However, the apparent absence of any provision in the PPM, the Note, the Borrower's Letter or the Security Agreement for payment of 10% of the proceeds from each investor's loan to NCC does raise an issue concerning First City's good faith. As to this issue, the court takes judicial notice of a sworn statement that has been submitted in a separate group of lawsuits now before the court in which First City seeks payment on promissory notes issued in connection with an unrelated limited partnership, *see* Certification of Richard Gipe, filed in connection with Defendants' Motion to Dismiss in *First City Federal Savings Bank v. Burk Dennis, et al.,* No. 87 Civ. 2959 (RWS), in which it has been asserted that NCC is the loan broker and "alter ego" of First City and that the two companies share office space and employees. Although not presented in the course of submissions on the instant motion, this factual assertion may permit the inference that the 10% payment to NCC was, in effect, an undisclosed increase in the interest rate charged to the defendants rather than a selling commission as described in the PPM.

First City's moving papers do not address either the relationship between itself and NCC or the transfer of funds to NCC, understandably since these issues were not raised by these defendants. Therefore, a genuine issue of fact remains unresolved as to the extent, if any, of First City's "actual knowledge of some fact which

would prevent a commercially honest individual from" accepting the Notes. *See Chemical Bank v. Haskell*, 432 N.Y.S.2d at 480, 411 N.E.2d at 1340–41.

Based on the findings and conclusions set forth above, an issue of material facts exists as to whether First City is a holder of the Notes in due course. Therefore, the motion for summary judgment is denied at this time with leave granted to renew the motion after the parties have been given the opportunity to conduct additional discovery to address the issues discussed above.

IT IS SO ORDERED.