FIRST CITY FEDERAL SAVINGS
BANK, Plaintiff,

v.

Anant BHOGAONKER and Asha Bho-
gaonker, Shahab Moghul and Ghulam
Moghul, Ahmed Khan, Mirza Ahmed
and Yasmin Ahmed, Hare K. Patnaik,
Ghaiyur Alam, Tahzibul Rizvi, Gautam
Pandhi and Chandrika Pandhi,
Khurshed Kasad and Zinobia Kasad,
Bharat Shah and Bina Shah, Gunvant
Shah and Sulochana Shah, Surya Misra
and Bishnupriya Misra, Defendants.

FIRST CITY FEDERAL SAVINGS
BANK, Plaintiff

v.

Robert S. Ross, Defendant.

Nos. 87 Civ. 5308 (RWS), 87 Civ. 5323
(RWS), 87 Civ. 5331 (RWS)–87 Civ. 5334
(RWS), 87 Civ. 5337 (RWS), 87 Civ. 5339
(RWS), 87 Civ. 5341 (RWS)–87 Civ. 5343
(RWS), 87 Civ. 5390 (RWS) and 87 Civ.
0914 (RWS).

United States District Court,
S.D. New York.

May 26, 1989.

See also 702 F.Supp. 473.

Bizar D'Alessandro Shustak & Martin,
New York City, for plaintiff; Gayle S.
Sanders and Adele Taylor Scott, of counsel.

Simon, Friedman & Associates, Haup-
pauge, N.Y., for defendants.

OPINION

SWEET, District Judge.

Defendants in *First City Federal Sav-
ings Bank v. Bhogaonker*, investors in the

Boston Place Associates Limited Partnership ("Boston Place"), have moved pursuant to Fed.R.Civ.P. 56 for partial summary judgment. Plaintiff First City Federal Savings Bank ("First City" or the "Bank") has cross-moved pursuant to Fed.R.Civ.P. 56 for summary judgment for the full amount of principal and interest due under promissory notes signed by the individual defendants, as well as the costs of collection, including reasonable attorneys fees. First City has also moved for summary judgment in *First City Federal Savings v. Ross.* Upon the facts and conclusions set forth below, both defendants' and First City's motions are denied.

*Facts and Prior Proceedings*

*First City v. Bhogaonker* arises out of the execution by defendants of promissory notes (the "Notes") in favor of First City in order to obtain a loan for an investment in Boston Place. Boston Place was sponsored by Forum Companies, Inc. ("Forum"), a corporation that owned several subsidiary corporations who acted as general partners and managing agents of limited partnerships that invested in ventures such as real estate, marinas and oil drillings. *First City v. Ross* arises out of the execution by defendant Robert S. Ross ("Ross") of a promissory note in favor of First City in order to obtain a loan for another Forum investment, The Learning Experience—Boca Raton Associates, Ltd. The parties have agreed that the disposition of the motions in *First City v. Bhogaonker* will govern the outcome in *Ross.*

The facts of this case are set forth in this court's opinion dated March 31, 1988, *First City v. Bhogaonker,* 684 F.Supp. 793 (S.D.N.Y.1988), familiarity with which is assumed (the "March Opinion"). The March Opinion denied First City's original motion for summary judgment with leave to renew to address the issue of whether First City is a holder of the Notes in due course, and specifically whether the 10% fee received by National Capital Corporation ("NCC") constituted additional and undisclosed interest collected from defendants by First City by virtue of the relationship between NCC and First City.

The Notes executed by defendants are variable interest rate promissory notes. They are for a certain sum and require payment of interest at an annual rate "equal to 2% above the rate of interest publicly announced by the Bank in New York, New York from time to time as its reference rate." The Bank publishes its reference rate in a report which is updated every time the reference rate changes, and the rate is available at the Bank's only branch, located in New York City.

In addition to the evidence presented in the first motion, First City has submitted affidavits of Stephen S. Laine ("Laine"), First City's President, and I. Michael Cash ("Cash"), NCC's President, on behalf of its motion for summary judgment. The following facts are derived from these affidavits and are uncontested, except as noted.

First City and NCC are separate and distinct entities which have never had common shareholders, officers or directors. First City is not a parent, subsidiary or affiliate of NCC. Their only relationship is that of lender and loan broker, and tenant and sub-tenant. NCC subleases space for its offices from the Bank and has access to the Bank's reception area and conference rooms, for which it pays a monthly rent.

The Notes at issue are "personal investor loans" made to individuals on the basis of statements indicating, among other things, net worth. In September, 1985, the Bank entered into an agreement with NCC pursuant to which NCC prepared a loan application package for each defendant, which included an application for a personal loan, a supplemental personal financial statement, a borrower's letter (the "Borrower's Letter"), and a Note. NCC also collected defendants' financial and credit references, tax returns, and other information. After gathering and analyzing the documents, NCC forwarded to the Bank the applications and information on the potential borrowers. The Bank then individually evaluated the credit worthiness of each defendant, and based upon the evaluations, approved defendants' applications for personal loans.

After the Bank approved the loans in late 1986, the proceeds were disbursed to Boston Place pursuant to the Borrower's Letter signed by each defendant. The Bank was directed by Boston Place, pursuant to a letter of authorization, to pay NCC 10% of the loan proceeds as NCC's commission. This 10% was deposited in NCC's account at the Bank. In addition, the Bank charged NCC an origination fee of 1% to 2% for any loan the Bank approved and funded. Apart from this fee, the Bank and NCC deny that the Bank received any part of NCC's fees and have submitted copies of deposit slips indicating that NCC's fee was disbursed from the loan proceeds into NCC's account.

According to Laine's unrebutted affidavit, the Bank's only involvement with the investments in Boston Place was to make individual personal loans to the defendants, and First City was not involved in the organization, negotiation or structuring of Boston Place and did not participate in the preparation or distribution of the private placement memorandum, offered no opinion or advice as to whether the investment was prudent, and made no representations to defendants concerning Boston Place. Indeed, in the Borrower's Letter, the investors acknowledged that the Bank was acting solely as a lender, and had "made no attempt to analyze or evaluate [the] intended investment in the Partnership."

In opposition to the Bank's motion, defendants have submitted the deposition testimony of Ronald Williams ("Williams"), the President of Forum, given in the case of *Krauss v. First City National Bank & Trust*, 87 Civ. 5585, now pending before the Honorable Shirley W. Kram.[1] The subject matter of *Krauss* involves a 1987 Forum limited partnership. According to Williams, the Bank assisted in the financing of several Forum deals in 1985 and 1986 and was acquainted with Forum's financial condition during this period. (Dep. at 16). Further, according to Williams, the Bank was "aware that Forum was experiencing cash flow problems during the middle to the latter part of 1986" and NCC knew that some Forum partnerships were in chapter 11 insolvency proceedings from the latter part of 1986, that Forum had defaulted on certain loans issued to it, and that several investor loans in earlier Forum deals were in default.

Furthermore, according to Williams, the Bank occasionally withheld proceeds on Forum real estate partnerships and applied them to outstanding balances owed by Williams, Forum or Forum investors in previous partnerships ("Q: Would it be a fair statement that the Forum oil and gas endeavor would assist in bailing out some of the prior endeavors? A: That is a fair statement, yes" and "Q: Would it be in the discretion of the bank to apply the proceeds in accordance with what account they deemed needed servicing? A: The bank would occasionally make a request that a portion of the defaults that were outstanding by Forum be satisfied out of money that was being funded, yes.").

Defendants have also submitted excerpts of deposition testimony of Richard Greenberg ("Greenberg"), the principal stockholder and former President of First City, Cash, Harvey Hirschfield, former officer of First City and now of NCC, and Melvyn Krauss, investor in a later Forum partnership, and the affidavit of Hank Vanderkamp to show the prior business dealings of the principals of the Bank and Cash, the exclusivity of referrals to First City by NCC from late 1985 through 1986, and the Bank's hiring of NCC employees after they left NCC.

In addition, defendants have adduced evidence that the private placement memorandum for Boston Place was in NCC's possession early on, that Greenberg stated that he may have reviewed the private placement memorandum when he was with First City, and that the private placement memorandum included a provision providing for required escrow accounts, closing dates and interest rates, all of which were violat-

---

1. The Bank was not present at the Williams' deposition and therefore did not cross-examine him.

ed, according to defendants. Furthermore, First City's name appears on the private placement memorandum.

*Summary Judgment*

■ Summary judgment should be granted where no unresolved factual disputes material to the outcome of the litigation exist. *Corselli v. Coughlin,* 842 F.2d 23 (2d Cir.1988). Ambiguities must be resolved, and inferences drawn, against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). Moreover, material issues of fact cannot be created by opinion, speculation or unsupported conclusory allegations. *Quarles v. General Motors Corp.,* 758 F.2d 839 (2d Cir.1985); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2d Cir.1980); *District 15 Intern. Ass'n. of Machinists and Aerospace Walkers, AFL–CIO v. Numberall Stamp and Tool Co., Inc.,* 658 F.Supp. 648 (S.D.N.Y.1987).

As seen in the March Opinion, the Bank has established a *prima facie* right to recover on the Notes. *First City v. Bhogaonker,* 684 F.Supp. at 796–97.

*Negotiable Instruments*

■ Uniform Commercial Code ("UCC") § 3–302 defines a holder in due course as a holder who takes an instrument "... for value; and in good faith; and without notice that is overdue or has been dishonored or of any defense against or claim to it on the part of any person." A "holder" is a person who is in possession of "... a document of title or an instrument or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank." UCC § 1–201(20). An "instrument" means a "negotiable instrument." UCC § 3–102(1)(e).

To be a negotiable instrument, a writing must "... contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article...." UCC § 3–104(1)(b). By a "sum certain," § 3–106(1) of the UCC permits "... stated interest or ... stated installments ... or with stated difference rates of interest before or after a default or a specified date...." Official comment 1 to UCC § 3–106 further states that the interest computation "... must be one which can be made from the instrument itself without reference to any outside source, and this section does not make negotiable a note payable with interest 'at the current rate.'"

New York recently amended its version of UCC § 3–106 to allow certain variable interest rate provisions to be included in an instrument without affecting its negotiability. The New York legislature first amended § 3–106(1)(a) to provide that "the sum payable is a sum certain even though it is paid (a) with a stated *rate of* interest." Ch. 225, 1988 Session Laws, eff. July 8, 1988. It then added a new subsection (2) to § 3–106:

> For the purposes of subsection one of this section 'a stated rate of interest' shall also include a rate of interest that cannot be calculated by looking only to the instrument but which is readily ascertainable by a reference in the instrument to a published statute, regulation, rule of court, generally accepted commercial or financial index, compendium of interest rates, or announced rate of a named financial institution.

Defendants point out that the Notes were executed in 1986, almost two years prior to the effective date of the amendment to UCC 3–106, and argue that the provision for interest in the Notes at 2% above the Bank's reference rate erases the Bank's status as a holder in due course.

However, the Notes are negotiable instruments as defined by UCC § 3–104 and § 3–106. The recent amendment by the New York State legislature codifies the common practice of the banking industry of using variable interest rate promissory notes. Indeed, as the New York State Assembly Memorandum in Support of Legislation indicates, the bill amended UCC § 3–106 was intended to recognize already existing commercial practices and its purpose was "to clarify any confusion sur-

rounding the use of variable interest rates." Because this 1988 amendment had not yet been passed, the opinion of the Honorable Louis L. Stanton in *National Union Fire Ins. Co. v. Tegtmeier*, 673 F.Supp. 1269 (S.D.N.Y.1987), holding that a note that providing for interest at two percent above prime rate after default is nonnegotiable, is no longer relevant. Thus, defendants' motion is denied.

*Holder in Due Course*

■ In the March Opinion, this court found a question of fact as to whether the 10% fee received by NCC constituted additional and undisclosed interest collected from defendants by First City by virtue of the relationship between NCC and First City, thus destroying First City's status as a holder in due course. However, defendants have failed to establish the existence of a material issue of fact as to this issue. Conclusory allegations that the close relationship of the Bank with NCC implies that the 10% commission was additional interest to the Bank fails to raise a material issue of fact, countered by the affidavits of Laine and Cash which include documentary evidence to establish that no part of NCC's commission was paid to First City.

■ As for Williams's deposition testimony, it contains a number of ambiguous, unsubstantiated statements and speculation. Further, his comments that NCC was aware of certain insolvency proceedings in late 1986 and 1987, that some of the loans were in default as of February 1987, and that Forum itself was in insolvency proceedings in August of 1987 fails to raise an issue as to the Bank's status as a holder in due course, for the Bank became the holder of the Notes in late 1986.

However, his testimony that the Bank was aware of Forum's financial difficulties and cash flow problems in the fall of 1986 just manages to raise a material issue of fact as to the Bank's good faith at the time it became a holder of the Notes and disbursed the proceeds of the Note to Boston Place. *See Chemical Bank of Rochester v. Haskell*, 51 N.Y.2d 85, 90, 432 N.Y.S.2d 478, 480, 411 N.E.2d 1339, 1341 (1980) ("good faith" is defined as " 'honesty in

fact in the conduct or transaction concerned' "); *Sundsvallsbanken v. Fondmetal, Inc.*, 624 F.Supp. 811, 817 (S.D.N.Y. 1985) (the existence of bad faith turns on whether the holder of the note knew that the transaction was suspect); *First Federal Sav. Bank v. Tazzia*, 696 F.Supp. 904 (S.D.N.Y.1988).

As for Williams' testimony that the Bank withheld proceeds on Forum real estate deals and applied them to outstanding balances owed in previous deals, the Bank has demonstrated by documentary evidence that all of the proceeds in this partnership from the defendants' loans were paid pursuant to the written instructions it received from defendants and from Forum, the general partner.

Moreover, the statements of non-party Krauss in the transcripts of telephone conversations with Williams are hearsay and thus inadmissible, as is the affidavit of the unidentified Hank Vanderkamp regarding a purported conversation with Harvey Hirschfeld. *See Lyon Ford, Inc. v. Ford Motor Co.*, 342 F.Supp. 1339 (E.D.N.Y. 1971). Similarly, the affidavit of Ladeukash Patnaik, which alleges that Hirschfeld appeared to be knowledgeable about the Forum deal, is disregarded as pure speculation.

Finally, even if the Bank had a copy of the private placement memorandum, there is no material issue of fact, for the Bank had no obligation to conform to the private placement memorandum or to escrow the loan proceeds. *See First City v. Bhogaonker*, 684 F.Supp. at 799. The fact that the Bank's name appeared in the private placement memorandum does not oblige it to conform.

*Conclusion*

Despite extensive discovery, defendants in *Bhogaonker* and in *Ross* have barely managed to raise an issue of fact sufficient to defeat summary judgment on behalf of the Bank. Therefore, defendant's and the Bank's motions for summary judgment are denied.

Discovery will be completed by July 26 and the pretrial order filed August 2, 1989.

It is so ordered.