**FIRST CITY NATIONAL BANK AND TRUST COMPANY, Plaintiff,**

v.

**Michael ZELLNER, Joseph Krader, Zellner Plastering Co., Inc., et al., James R. Wilcox, Defendants and Plaintiffs on Counterclaim,**

v.

**INTERDISCOUNT SERVICES, LTD., Tara Cole, First California Lessors Corp., and Gene Lobato, Defendants on Counterclaim.**

**Nos. 87 Civ. 6081(RWS), 87 Civ. 6100(RWS), 87 Civ. 6102(RWS) and 87 Civ. 6353(RWS).**

United States District Court, S.D. New York.

Jan. 14, 1992.

Bizar Shustak Martin & Schneider, New York City (Gayle S. Sanders, of counsel), for plaintiff.

Richard I. Wolff, P.C., New York City (Burton Mark Senkfor, of counsel), for defendants and plaintiffs on counterclaim.

OPINION

SWEET, District Judge.

Plaintiff Joint Venture Asset Acquisition Group ("JVAA") has moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment against each of the defendants and for an award of all amounts of unpaid principal, accrued interest, collection costs, attorneys' fees, and punitive damages. For the reasons set forth below, the motion is denied.

*The Parties*

JVAA is the assignee of the rights of the First City National Bank and Trust Company, formerly known as the First City Federal Savings Bank ("First City"), to the promissory notes at issue. This interest was transferred to JVAA on December 14, 1990. First City was declared insolvent by the Federal Deposit Insurance Corporation ("FDIC") on December 20, 1989.

Michael J. Zellner ("Zellner"), Joseph Krader ("Krader"), and James R. Wilcox ("Wilcox") are citizens and residents of the State of California. Zellner Plastering Co. ("Zellner Plastering"; collectively, the "Defendants") is a California corporation with its principal place of business in Los Angeles, California. The Defendants are all investors in a California limited partnership and the purported signers of the documents at issue.

Interdiscount Services, Ltd. ("Interdiscount"), is a New York corporation with its principal place of business in New York City. Tara Cole ("Cole") is a New York resident and was Interdiscount's President and owner of one-half of its stock.

First California Lessors Corp. ("First California") is a California corporation with its principal place of business in California. Gene Lobato ("Lobato") is a citizen and resident of California.

*Prior Proceedings*

These cases were filed in August and September 1987. The Defendants answered and counterclaimed in February 1988. An amended complaint was then served, to be followed by an amended counterclaim.

The cases were consolidated on February 10, 1989.

The present motion was filed on September 1, 1989. Defendants filed opposition papers in November 1990. On December 20, 1989, the Office of the Comptroller of the Currency declared First City insolvent and appointed the Federal Deposit Insurance Corporation ("FDIC") as its receiver. The FDIC requested the Honorable Vincent L. Broderick to stay all actions and proceedings in the Southern District of New York in which First City was a party, including these cases. Judge Broderick signed such an order on December 22, 1989.

The stay expired on April 25, 1990. Prior to that date, the FDIC and JVAA had entered into an agreement acknowledging that JVAA had assumed First City's rights in a number of defaulted notes, including those at issue here, and that JVAA would intervene in all pending actions to seek enforcement. JVAA intervened in the present action by stipulation on August 14, 1990. In the stipulation, JVAA recognized that it was not a holder in due course because the notes were in default, but claimed whatever status First City had enjoyed previously.

The present motion was reinstated and the filing of papers continued. Oral argument was heard on September 26, 1991, and the motion considered submitted as of that date.

*Facts*

The facts at issue are in dispute. The following therefore does not constitute a finding of fact. The current allegations and defenses here, though, are quite similar to those previously before this Court in several related matters. *See, e.g., First Federal Savings Bank v. Tazzia,* 696 F.Supp. 904 (S.D.N.Y.1988); *First City Federal Savings Bank v. Dennis,* 690 F.Supp. 221 (S.D.N.Y.1988); *First City Federal Savings Bank v. Bhogaonker,* 684 F.Supp. 793 (S.D.N.Y.1988).

Defendants are all investors in a failed limited partnership. Each purchased units in the Beam Systems Income Fund I ("Beam") with the hope of reaping profits and enjoying tax benefits. Such was not the case, however, and through the less than straightforward way in which Beam was financed, they find themselves defendants and third-party plaintiffs in the present action.

The price for each limited partnership unit in Beam was $13,000. This was broken down into two components: a $1,391 cash down payment and the execution of an Agreement of Assumption of Partnership Recourse Liability for $11,609. But the Defendants say they were told that obligations beyond the down payment would be paid by income from Beam or by MPA Associates, Inc. ("MPA"), the major promoter of Beam. In December of 1985, Zellner and Krader signed up for five units each; Zellner Plastering and Wilcox each opted for ten.

Soon thereafter, the financing of the limited partnership commenced, and began to go amok. According to the Defendants, the following players operated within the First City–Interdiscount–National Capital framework they have alleged: At its core is Richard Greenberg ("Greenberg") and his brother Fred. Greenberg was a founder, 50% shareholder, and president of First City, the predecessor to the Plaintiff. Greenberg allegedly was chummy with Michael Cash, the President of National Capital. National Capital shared/subleased space in the Greenbergs' offices.

Cole of Interdiscount was introduced to Greenberg and First City through an intermediary in early 1986. They apparently worked out a deal by which First City would fund $4.8 million in loans to limited partnership investors referred to it by Interdiscount. A kicker was that National Capital would actually evaluate the loans.

The Defendants eventually were presented with some of the documents at issue for their signatures. These documents included a promissory note ("Note"), assignment and security agreement ("Security Agreement"), a loan application, an engagement and authorization letter ("Engagement Letter"), and a borrower's letter ("Borrower's Letter"). The Defendants signed the doc-

uments in the Spring of 1986 even though there were blanks where normally one would expect to see a lender's name.[1] Moreover, the documents generally included many clauses pertaining to First City's rights and liabilities, including the following passage from the Borrower's Letter:

> The Bank has made no attempt to analyze or evaluate my intended investment in the Partnership. The Bank has made no representation to me, expressed or implied, to induce me to request this loan. The Bank has given no opinion or advice as to whether it is wise or prudent for me to invest funds in the Partnership.... I agree to hold the Bank harmless and do hereby release the Bank from any and all claims that I may have relating to or arising out of my investment.

The Defendants were also required to sign UCC statements.

The paper flow apparently was handled through Cole. National Capital or First City allegedly created the documents and passed them to Cole for signatures. The documents were completed by the Defendants and returned to Cole/Interdiscount. Interdiscount then sent the completed documents to National Capital in April of 1986. The Engagement Letter the Defendants contend they signed directed Interdiscount to pay the loan proceeds directly to Beam.

In April 1986, a switch allegedly took place. Cole sent a letter dated April 7, 1986, to National Capital stating that the Engagement Letter was "inaccurate" as signed. A second Engagement Letter was suggested as an alternative. That letter directed payment of the loan proceeds to First California Lessors, not Beam.

Cole then apparently decided she and Interdiscount wanted out of the deal. According to the Defendants, she did not understand the terms of the deal and knew nothing about First California. She allegedly telephoned Greenberg, with whom she really believed she was doing business, and told him that she did not want to proceed. Cole also wrote to National Capital on April 10, 1986, and asked that the Defendants' documents be returned to her.

Cole then changed her mind. On April 14, 1986, she suggested to Lobato that signatures on the new Engagement Letters ("Second Engagement Letter") be obtained. The next day, she apparently received signed copies via fax. The Defendants deny ever having signed these documents.

First City readily approved the loans, and payment was eventually made to First California through Interdiscount. Neither Beam nor the Defendants ever received any of the loan proceeds. The Defendants all failed to make payments on their Notes, leading to the instant litigation.

*Discussion*

JVAA argues it is entitled to summary judgement because it has made out a *prima facie* case for recovery on the Notes that the Defendants cannot rebut. The Defendants contend that multiple questions of fact exist concerning whether First City, and hence JVAA, was a holder in due course.

Of course, "[s]ummary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). 'As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party.' However, where the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991) (citations omitted). As is often stated, "[v]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact

---

1. Zellner and Krader individually guaranteed all of Zellner Plastering's obligations also, and are being sued upon these Guaranties as well.

and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991); *see also Bay,* 936 F.2d at 116.

■ Under New York law, proof of a note and a defendant's failure to make payment establishes a *prima facie* case for recovery. *See Gateway State Bank v. Shangri–La Private Club for Women, Inc.,* 113 A.D.2d 791, 493 N.Y.S.2d 226, 227 (2d Dep't 1985), *aff'd,* 67 N.Y.2d 627, 499 N.Y.S.2d 679, 490 N.E.2d 546 (1986). Although the terms and gloss the parties give the documents here are disputed, that all of the documents, except for the Second Engagement Letter, were executed by the Defendants is not. JVAA has therefore established a *prima facie* claim on the Notes.

### I. *Holder in Due Course*

■ Questions of fact nevertheless exist as to whether First City was a holder in due course. Under New York's Uniform Commercial Code:

A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

N.Y.U.C.C.Law § 3–302(1). The Defendants assert that JVAA has failed to meet its burden as to each of the three requirements.

### A. Value

■ Under the Uniform Commercial Code, a holder takes an instrument for value "to the extent that the agreed consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process" or "when he gives a negotiable instrument for it or makes an irrevocable commitment to a third person." *Id.* § 3–303. The Defendants argue that First City did not give value for the promissory notes because the funds were wired to an unauthorized third party.

In the Engagement Letter the Defendants allege they signed, they authorized Interdiscount to "insert the name of the lending institution" on the appropriate papers and directed Interdiscount to "pay the proceeds [of the loan] to the order of Beam." It is this latter statement that is alleged to have been changed in the Second Engagement Letter. The Defendants contend that the loan was paid out inconsistent with this endorsement, and so First City never gave value for the instrument. *See Marine Midland Bank, N.A. v. Price, Miller, Evans & Flowers,* 57 N.Y.2d 220, 227, 455 N.Y.S.2d 565, 569, 441 N.E.2d 1083, 1087 (1982).

In the Borrower's Letter, however, the Defendants' directed the as of then unknown lender to pay the proceeds of the loan to Interdiscount. There is no allegation that First City did not pay the proceeds to Interdiscount, nor that there was any tampering with that letter. The insertion of First City's name at a later date appears to be in accordance with the Engagement Letter and with U.C.C. § 3–115. The loan was disbursed by First City to Interdiscount as instructed by the Defendants'; value was therefore given for the Notes. *See National Union Fire Insurance Co. v. Woodhead,* 917 F.2d 752, 756 (2d Cir.1990); *John Deere Co. v. Broomfield,* 803 F.2d 408, 410 (8th Cir.1986).

### B. Good Faith

■ The Code defines good faith as "honesty in fact in the conduct or transaction concerned." N.Y.U.C.C.Law § 1–201(19). In an action brought by a bank to recover amounts due on an outstanding promissory note, such as the present action, the New York Court of Appeals has set forth the following subjective standard:

[T]he inquiry is not whether a reasonable banker in [the bank's] position would have known, or would have inquired, concerning the alleged breach ... [of] partnership duties, but rather, the inquiry is what [the bank] itself actually knew. If [the bank] did not have actual knowledge of some fact which would have prevented a commercially honest individual from

taking up the instruments, then its good faith was sufficiently shown: *Chemical Bank v. Haskell,* 51 N.Y.2d 85, 432 N.Y.S.2d 478, 480, 411 N.E.2d 1339, 1341 (1980). Under this standard, the existence of bad faith turns on whether the holder knew the transaction was suspect. *Bhogaonker,* 684 F.Supp. at 797; *Sundsvallsbanken v. Fondmetal, Inc.,* 624 F.Supp. 811, 817 (S.D.N.Y.1985).

■ The Defendants argue that First City lacked good faith by virtue of its relationships with Interdiscount and National Capital and its own involvement in the transactions at issue. In particular, the Defendants contend that First City and National Capital were alter egos or agents. If so, First City may have at least been aware of the irregularities alleged, if not an active participant.

In support of their contention that National Capital was First City's agent, the Defendants rely on several matters. First, National Capital and First City shared office space. Second, First City generally referred its prospective borrowers to National Capital. National Capital would then review loan applications for First City, using criteria established by First City and acting as its intermediary.

In the present situation, the Defendants point to the several additional factors to strengthen their agency argument. Cole was allegedly referred to National Capital through Greenberg after they had entered into their referral agreement. Greenberg, though, allegedly gave Cole the impression that the Greenbergs owned National Capital. The Greenbergs apparently told her that National Capital would do all of the processing of the loan applications at issue and review the offering memoranda and the syndicators. Moreover, they point to a passage in Cole's deposition testimony from which it can be inferred that First City approved the change from the original Engagement Letter to the Second Engagement Letter. *See* Cole Transcript 493.

The Plaintiff counters that the relationship between First City and National Capital was only that of a tenant/sub-tenant and a lender/loan broker. They apparently did not share any common officers, directors or shareholders. *See also First City Federal Savings Bank v. Bhogaonker,* 715 F.Supp. 1216, 1217 (S.D.N.Y.1989). Even so, the Defendants have raised triable issue of fact concerning the relationship between First City and National Capital. While the two may not have been alter egos, the inference can be raised, primarily through Cole's testimony, that First City employed National Capital as an agent.

From this agency relationship and the other aspects of the transactions at issue, questions concerning First City's good faith arise. First, there is the matter of the Borrower's Letter. It has a clause in it which states that "[t]he Bank has made no attempt to analyze or evaluate my intended investment in the Partnership." First City, however, had National Capital review the entire investment, including the offering materials, before placing its name on the documents. From this it can be inferred that First City knew that this, and other like disclaimers and waivers, were false at the time the documents were executed, thus raising a question concerning First City's good faith.

Second, National Capital was brought into the picture at First City's behest. It seems that National Capital charged the Defendants 5% of their loan proceeds for its services. Two percent, or 40% of the National Capital's fee, was paid to First City as an origination fee. This fee arrangement allegedly increased the price of the transaction by being, in effect, an undisclosed interest rate increase. As in the previous First City cases, this also raises the issue of First City's good faith. *See Tazzia,* 696 F.Supp. at 909; *Dennis,* 690 F.Supp. at 222; *Bhogaonker,* 684 F.Supp. at 799.

Third, First City and Interdiscount, through Greenberg and Cole, agreed in March of 1986 that the Defendants would be charged a 14% interest rate on their loans and that First City would receive 13½% and Interdiscount ½%. This arrangement also was not disclosed to the Defendants, even though it was put in place before the loan papers were signed. This too raises the issue of First City's good faith.

Fourth is the matter of the Second Engagement Letter. The series of events surrounding Cole's apparent attempt to withdraw the Defendant's documents from National Capital are capable of multiple interpretations.[2] Some, such as that National Capital was trying to push Interdiscount out of the deal, favor the Plaintiff. Others, such as that some culpable party was trying to use Interdiscount in furtherance of a fraud, favor the Defendants. Moreover, the entire manner in which the Second Engagement was sent to Interdiscount with the disputed signatures and in which First City approved the Second Engagement Letters can be viewed as being fraught with irregularities indicative of bad faith. *See Scarsdale National Bank & Trust Co. v. Toronto–Dominion Bank,* 533 F.Supp. 378, 386–87 (S.D.N.Y.1982).

Genuine issues of fact thus remain unresolved as to the extent, if any, of First City's "actual knowledge of some fact which would prevent a commercially honest individual from" accepting the Notes. Summary judgment in its favor is precluded.

Plaintiff also argues in its Reply Memorandum that the counterclaims should be dismissed pursuant to Rule 54(c) of the Federal Rules of Civil Procedure. Rule 54(c) is, by its terms, applicable to judgments and their accordance with *pleadings*. The Plaintiff has not properly sought relief from the counter-claims, nor has it argued why such relief should be awarded. This argument therefore will not be addressed.

*Conclusion*

For the reasons set forth above, Plaintiff's motion for summary judgment is denied. Discovery is to be completed by March 18, 1992, and Pre–Trial Orders submitted on or before April 1, 1992.

It is so ordered.

---

**2.** The withdrawal scenario also creates issues of fact as to whether First City had notice of any

defenses to the Notes.