■ VINCENT BALDASANO et al., Appellants, v BANK OF NEW YORK, as Successor to Long Island Trust Co., et al., Respondents, et al., Defendants.—Order, Supreme Court, New York County (Francis N. Pecora, J.), entered October 15, 1990, which granted the motion by defendants Intercontinental Monetary Corp., Mutual Life Insurance Company of New York and The Bank of New York to dismiss the complaint against them pursuant to CPLR 3211 (a) (1), (2) and (5) for failure to state a cause of action and on grounds of res judicata and collateral estoppel, unanimously reversed, on the law and the facts, and the motion is denied, without costs.

Sarasota Plaza Associates, a New York limited partnership, is essentially a tax shelter whose sole asset is a Sarasota Florida office building known as United First Federal Plaza, which is said to have been purchased by the general partner, Sarasota Management Corp., for $22,763,000. Units in the limited partnership were offered for sale for $97,928 each pursuant to a prospectus dated September 18, 1984. Of the purchase price per unit, only $1,835 was payable in cash with the balance payable by promissory note.

Plaintiffs, who are limited partners, allege, *inter alia,* that the general partner was controlled by one Barry Trupin and was part of the Rothschild Group of companies, including defendants Rothschild Registry Properties Corp. and North American Associates, Inc., and that the property had been purchased from third parties for only $15.2 million and then been transferred from other Rothschild Group entities to Sarasota Management Corp. for the increased price. The subsequent use of the inflated purchase price in calculating the tax shelter benefits, it is alleged, rendered those statements in the prospectus materially false.

Sarasota Management Corp., the general partner, received 167 promissory notes executed by limited partners, in the aggregate amount of $11,583,750.63, which it then transferred, apparently without consideration, to North American Associates, Inc., which, in turn, transferred the notes to Rothschild Registry Properties Corp., again without consideration.

In December 1984, Intercontinental Monetary Corp. (IMC) purchased all of Sarasota Plaza Associates' promissory notes from Rothschild Registry Properties Corp. for $11,087,749.94. IMC, which was in the business of acting as a clearing house for limited partnership notes and had previously made such purchases with respect to ten other Rothschild Group limited partnerships, then pledged the notes as security for repayment of a more than $11 million loan from Mutual of New York (MONY), with IMC retaining equitable title to the notes. Defendant Bank of New York (BNY) is the successor to the Long Island Trust Co., which was retained by MONY as agent and/or trustee in collecting payments on the notes from the limited partners.

Plaintiffs further allege that Sarasota Management Corp. then obtained mortgages on the basis of the inflated purchase price and that these inflated mortgages ultimately led to the foreclosure of the property, when the rental income was insufficient to pay the inflated mortgage debt on the property.

In September 1988, in a Florida State court action, 33 of the limited partners, including 14 of the 29 plaintiffs herein, succeeded in ousting Sarasota Management Corp. as general partner and replacing it with a new general partner, 1390 Management Corp., controlled by one of the limited partners, Marilyn Snodell, not a party to this action.

In January 1989, the new general partner allegedly discovered looting of partnership assets, including the $11 million obtained from IMC and an additional $3.3 million in bogus

"loans" to the original general partner. As a result, the new general partner on behalf of the limited partnership voluntarily filed for Chapter 11 bankruptcy in Florida and asserted a claim pursuant to Bankruptcy Code § 544 (b) (11 USC § 544 [b]) to avoid or annul the transfers of the limited partners' notes to IMC, MONY and BNY. This claim was denied by the bankruptcy court on grounds that there was no evidence that the transfers were made without adequate consideration or with the requisite intent to delay, hinder or defraud creditors.

Plaintiffs then commenced this action, seeking a declaratory judgment that IMC, MONY and BNY were not holders in due course under UCC 3-201, 3-302 (1) and (3) (c), which would allow them to assert defenses of fraud against these defendants just as they could have had Sarasota Management Corp. retained the notes. Specifically, plaintiffs allege that the moving defendants fall within the ambit of UCC 3-302 (3) (c), which provides that a holder does not become a holder in due course of an instrument by purchasing it as part of a bulk transaction not in the regular course of business of the transferor.

The IAS court held that the affidavits and documentary evidence conclusively demonstrate that plaintiffs have no cause of action under UCC 3-302 (3) (c); that the issue of whether IMC, MONY and BNY took the Sarasota Plaza Associates notes as holders in due course was actually litigated and determined in the Florida action; that the plaintiffs are bound by the factual findings of the Florida court under the doctrine of collateral estoppel; and, that plaintiffs' claim of lack of privity has no merit since they are limited partners of Sarasota Plaza Associates, the plaintiff in the Florida action and actually controlled the litigation.

We disagree and reverse accordingly.

On the present record, there is insufficient evidence to establish conclusively that plaintiffs were in privity with the new general partner in the Florida bankruptcy proceeding. While, ordinarily a general partner has a fiduciary relationship with the limited partners in the operation of the limited partnership, their relationship with respect to the issue of whether the limited partners' notes were fraudulently induced or are otherwise payable to the partnership would appear to be adversarial in nature. That plaintiffs were involved in the 1988 Florida State court action, which replaced the original general partner with their candidate, does not necessarily lead to the conclusion, urged by respondents, that they controlled the Florida bankruptcy proceeding. Moreover, even if plain-

tiffs were in privity with the new general partner in the Florida bankruptcy proceeding, it is clear that the bankruptcy court's decision is not a bar to the present complaint.

Avoidance of the transfers of the notes under Bankruptcy Code (11 USC) § 544 (b) is not the same cause of action as the present one, seeking a declaration that defendants are not holders in due course. If the Federal claim is comparable to any State cause of action, it is similar to an action to set aside a fraudulent conveyance. Thus, the questions of whether the transfer of the notes in issue was a bulk transaction not in the regular course of business of the transferor and whether defendants are holders in due course in light of the provisions of UCC 3-302 (3) (c) were irrelevant to the bankruptcy court. Determination of these issues turns on the facts of each particular case (see, Combine Intl. v Berkley, 141 AD2d 465, 468).

It appears that the transferor to IMC was Rothschild Registry Properties Corp. We do not know whether that corporation had any other assets, nor do we have any idea what its regular course of business was. Moreover, it appears that since IMC remains the beneficial owner of the notes, MONY is merely a pledgee of the notes and BNY, as a mere collection agency of MONY, is not a holder, let alone a holder in due course.

On the current record plaintiffs' claims, whatever the ultimate determination of these issues is, cannot be dismissed summarily. Concur—Rosenberger, J. P., Kupferman, Kassal and Rubin, JJ.