(May 15, 1997)

■ AMERICAN INVESTMENT BANK, N. A., Appellant, v DAVID M. HUTCHINGS et al., Respondents. [657 NYS2d 650] —Order of the Supreme Court, New York County (Ira Gammerman, J.), entered December 19, 1995, which denied plaintiff's motion for summary judgment, is unanimously affirmed, without costs or disbursements.

Defendants herein are private individuals who had each invested in one of six limited partnerships created by the Citi-Equity Group (the Group), a conglomerate whose stated business was the ownership and management of low income housing. The defendants had purchased their interests at different times between November 1991 and December 1993 by executing individual promissory notes payable to the appropriate limited partnership. The partnerships sold all of the notes, including notes given by non-parties, in bulk to the plaintiff American Investment Bank, N. A. (American or the Bank). The notes were endorsed to the order of the Bank by Gary W. Lefkowitz, the President and General Partner of each of the Group's partnerships. After being notified of the assignment, each of the defendants made at least one payment to the Bank.

In May and June of 1994, Mr. Lefkowitz was charged in an indictment and superseding indictment in Federal court in Minnesota with conducting a six year, $50 million embezzlement and fraud scheme intended to defraud the United States Internal Revenue Service, low income housing developers and 7,000 investors. Engaging in a Ponzi-type scheme with the

funds raised from the investors in the limited partnerships, Lefkowitz allegedly used the funds to support a lavish life style rather than to purchase real estate and to construct low income housing. Further, Lefkowitz was charged, through the Group, with embezzling and converting partnership funds, juggling funds between partnerships, fraudulently obtaining tax credits and falsely misrepresenting how investor funds would be used. Defendants claim, and the plaintiff concedes, that Lefkowitz was ultimately convicted on all counts. The Citi-Equity Group and certain affiliated limited partnerships were forced into involuntary bankruptcy in the same Federal court in Minnesota and defendants defaulted on their payments to the Bank due on August 1, 1994.

The IAS Court denied the motion by the plaintiff Bank for partial summary judgment to recover the balance due under the promissory notes, finding that there were issues of fact, including whether the Bank was a holder in due course of the notes, and whether the Bank took the notes without notice of any defenses. We agree with this conclusion and, therefore, affirm. Section 3-302 of the Uniform Commercial Code defines "Holder in Due Course" in pertinent part as follows:

"(1) A holder in due course is a holder who takes the instrument

"(a) for value; and

"(b) in good faith; and

"(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

The same section notes that: "A holder does not become a holder in due course of an instrument * * * (c) by purchasing it as part of a bulk transaction not in regular course of business of the transferor" (Uniform Commercial Code § 3-302 [3] [c]).

"Whether a transfer is a bulk transaction not in the regular course of business turns on the facts of the particular case" (*Combine Intl. v Berkley*, 141 AD2d 465, 468; *Baldasano v Bank of N. Y.*, 174 AD2d 457, 460).

"[A] transfer between two financial institutions * * * would be presumed to be in the ordinary course of business, while a transfer from the Partnership to [a financial institution] would give rise to no such presumption. It follows that if defendant can establish its bulk transfer allegation * * * plaintiff would then have the burden of proving at trial that it is a holder in due course." (*Connecticut Natl. Bank v Ramirez*, 1992 WL

367111, 2, 1992 US Dist LEXIS 17792, *4 [SD NY, Nov. 24, 1992, Knapp, J.].)

In *Pugatch v David's Jewelers* (53 Misc 2d 327), plaintiff was found, after trial, to be a holder in due course, since it was in the regular business of buying notes and the defendant routinely discounted all the notes it received once a week with the plaintiff in the regular course of its business. Here, on the other hand, the defendants alleged, and the record is clear, that the partnerships were in the business of constructing or operating low income housing, and there was no evidence presented that any individual partnership sold the notes of investors on a periodic, ongoing basis to provide cash flow for its business, that the funds were actually used to finance housing or that the partnerships had any assets other than the notes.

The IAS Court properly concluded that defendants should be allowed to explore in discovery their claims that "each partnership engaged in an initial, one-time bulk transfer of all of its notes for the sole purpose of divesting the investors of legitimate defenses" and that "the partnerships were mere shells created to facilitate Lefkowitz' alleged fraud * * * and the Bank had notice of the fraud by virtue of its regular course of dealing with the [Group] entities."

"[T]ransactions where the purchaser of the (otherwise) negotiable instrument ought to be suspicious that the seller may be trying to thwart promisors' defenses * * * and the fact that the transfer is not in the ordinary course of business reinforces the inference that the transfer is an attempt to extinguish creditors' claims." (*Northwestern Natl. Ins. Co. v Maggio*, 976 F2d 320, 322.)

Defendants purchased their interests between November 1991 and December 1993 and the partnerships sold all their notes in bulk to the plaintiff Bank within a few months of the purchases. The notes were endorsed over to the Bank by Mr. Lefkowitz. Defendants raised an issue as to whether the Bank knew of the Lefkowitz fraud during the period it was purchasing the promissory notes. Also in opposition to plaintiff's summary judgment motion, the defendants noted that a former Chief Executive Officer of plaintiff took over control of Citi-Equity Group and the partnerships in question, and testified before the Bankruptcy Court that there were "fairly well known rumors in the investment community" of an investigation undertaken of Mr. Lefkowitz by the Federal authorities, and that he was in possession of this knowledge well before Lefkowitz's indictment.

This raises the issue of whether the Bank had notice of the

Lefkowitz fraud during the period it purchased the promissory notes. Such notice would negate holder in due course status, even where the notes contain waiver of defense clauses (Uniform Commercial Code § 3-302 [1]; § 9-206; *see, Combine Intl. v Berkley, supra,* at 467; *First City Natl. Bank & Trust Co. v Zellner,* 782 F Supp 232, 236-238). Concur—Murphy, P. J., Rosenberger, Ellerin and Nardelli, JJ.