**FIRST FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Henry TAZZIA, Defendant and Third–Party Plaintiff,**

v.

**Hans HOFMEISTER, Pinehurst Associates and Forum Companies, Inc., Third–Party Defendants.**

No. 87 Civ. 7431 (RWS).

United States District Court, S.D. New York.

Sept. 19, 1988.

Bizar D'Alessandro Shustak & Martin, New York City (Gayle S. Sanders, of counsel), for plaintiff.

Metry, Metry & Sanom, Detroit, Mich. (Samuel T. Sanom, of counsel), Bernstein Seawell Kove & Maltin, New York City (Myron Kove, of counsel), for defendants.

## OPINION

SWEET, District Judge.

Plaintiff First City Federal Savings Bank ("First City" or "the Bank") has moved for an order pursuant to Fed.R.Civ.P. 56 granting summary judgment in its favor on its action against defendant Henry Tazzia ("Tazzia") for amounts due on a promissory note in unpaid principal and interest accrued thereon, together with the costs of collection, including reasonable attorneys' fees. Tazzia has moved for a change of venue pursuant to 28 U.S.C. 1404(a) from the U.S. District Court Southern District of New York to the U.S. District Court Eastern District of Michigan. Upon the facts and conclusions set forth below, both motions are denied.

*Facts*

The material facts surrounding the making of the promissory note are not in dispute and are set forth in First City's statement pursuant to Rule 3(g) of the Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York. First City is a National Banking Association with its principal office in New York City. Tazzia is an individual investor from Michigan.

On November 13, 1986, Tazzia executed a promissory note (the "Note") in favor of First City to obtain a loan for investment in a tax advantaged limited partnership known as Texoma Associates, Ltd. ("Texoma"). The Note provided that Tazzia would pay the Bank the principal amount of $35,000.00 in 20 quarterly installments of $1750.00, commencing on November 30, 1986 with a final installment due on August 31, 1991, together with interest on the unpaid principal at an annual rate equal to 2% above the Bank's Reference Rate of interest as publicly announced by the Bank from time to time. The Note also provided that upon default in payment of any amount due, the entire amount of the Note would become due and payable without notice or demand. Further, Tazzia agreed to waive the right to interpose any set-off or counter-claim and agreed that the Note would be governed by and construed in accordance with the laws of the state of

New York. Finally, the Note required Tazzia to reimburse First City for all costs and expenses including attorneys' fees and disbursements incurred in connection with enforcement of Tazzia's obligations.

In addition to the Note, Tazzia executed an Assignment and Security Agreement and a Borrowers Letter. The Security Agreement granted First City a security interest in Tazzia's interest in the Partnership and also required him to reimburse the Bank for all costs and expenses in connection with its enforcement of its rights thereunder. The Borrower's Letter authorized the Bank to date the Note and pay the proceeds of the Loan directly to the Partnership. It also acknowledged that the Bank was acting solely as a lender and not as an investment advisor.

Neither the Note, nor the Security Agreement, nor the Borrower's Letter contained any provision for cancellation of the Note or for cancellation of Tazzia's obligations thereunder in the event that he withdrew from the Partnership, nor did the Bank have any agreement with the Partnership, its promoters or anyone else to cancel the Note in the event of Tazzia's withdrawal from the Partnership.

At some point after the execution of the Note, Texoma dissolved due to financial problems, and Forum Companies, Inc. ("Forum") became the receiving partnership of the proceeds of the Note. Shortly thereafter, in April of 1987, Tazzia withdrew from the investment plan and apparently obtained a release by Forum, Pinehurst Associates and Pinehurst's agent, Hans Hofmeister, promoters and investors in the Partnership.[1] The releasing parties named above guaranteed that all proceeds forwarded by Tazzia in connection with the investment plan would be returned to Tazzia as would the Note itself. On May 12, 1987, Forum returned Tazzia's $1000.00 downpayment plus $1750.00, the amount of his first and only quarterly payment on the Note. There is no indication that the Note itself was returned, however.

On October 13, 1987, the Bank declared the entire unpaid balance of the loan ($31,-500.00) due and immediately payable to the Bank together with accrued interest to the date of payment, as provided in the Note. The Bank brought this action against Tazzia in October of 1987. On or about November 13, 1987, the Bank released the proceeds of the Note—$35,000.00—to the Partnership's account at the Bank in New York. Tazzia claims that the Bank made this payment without his knowledge or consent. On January 6, 1988, Tazzia, in turn, sued Forum for any judgment against him in favor of First City.

*Summary Judgment on the Notes*

In order to grant summary judgment, the court must determine that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court's responsibility is not to resolve disputed issues of fact, *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), but to determine whether there are any factual issues to be tried, while resolving ambiguities and drawing inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1988). Summary judgment enables a court to "streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation." *Knight v. U.S. Fire*, 804 F.2d at 12.

This action was brought solely for judgment upon an instrument for the payment of money. Under the law of New York, proof of the Note and defendants' failure to make payment thereon establishes a *prima facie* case for recovery on the Notes. *Gateway State Bank v. Shangri-La Private Club for Women, Inc.*, 113 A.D.2d 791, 493 N.Y.S.2d 226, 227 (2d Dep't 1985), *aff'd*, 67 N.Y.2d 627, 499 N.Y.S.2d 679, 490 N.E.2d 546 (1986); *Mills v. Ryan*, 41 A.D.2d 689, 342 N.Y.S.2d 889 (4th Dep't 1973), *aff'd*, 33 N.Y.2d 948, 353 N.Y.S.2d

---

**1.** Tazzia has not annexed the release by Forum to his opposition papers.

730, 309 N.E.2d 130 (1974). In this case, defendant signed the Note pursuant to which he agreed to pay First City installments of principal and interest. A default occurred in payment of principal and interest due, and First City declared the unpaid balance of the debt due and immediately payable together with accrued interest to the date of payment and thereafter transferred the proceeds of the Note.

Tazzia does not deny that he executed the Note, nor does he deny that there has been a default in payment of principal and interest under the terms of the Note. However, Tazzia asserts two main arguments in an attempt to oppose summary judgment, one of which is without merit, and one which goes to the issue of First City's status as a holder of the Note in due course.

■ First, in opposition to the motion for summary judgment, Tazzia claims that he was released from his obligations under the Note by Forum, Pinehurst Associates and its agent Hans Hofmeister. This claim is without merit. The Bank and Tazzia are the only parties to the Note, and only the Bank can release Tazzia from his obligations to the Bank. Thus, the "release" by Forum, Pinehurst and Hofmeister does not absolve Tazzia from his obligations under the Note to the Bank.

Second, Tazzia has submitted a Counter–Affirmation by his counsel, Samuel Sanom, (the "Sanom Counter–Affirmation") in which Sanom alleges that the Bank's deposit of funds into Texoma's account at the Bank was done in bad faith and with knowledge of Texoma's financial instability and dissolution. Sanom Counter–Affirmation ¶ 6.[2] Sanom further contends that the

Bank should not have released the loan proceeds until the Partnership was formed and maintains that it was contrary to the Bank's security interest in the Partnership to have done so. *Id.* at ¶ 5. Sanom goes so far as to speculate that the Bank was attempting to use the Tazzia obligation to obtain credit to satisfy unpaid amounts that Forum owed the Bank from unrelated ventures. *Id.* at ¶ 6.

*Holder in Due Course*

Tazzia's allegation of bad faith on the part of the Bank is an attempt to raise a genuine issue of material fact as to whether First City is a holder of the Note in due course.[3] According to the Uniform Commercial Code ("UCC"), a holder in due course is a holder who takes an instrument (1) for value, (2) in good faith, and (3) without notice that it is overdue or has been dishonored or of any other defense or claim against it on the part of another. N.Y.U.C.C. § 3–302(1). Here, as payee under the Notes, First City may be a holder in due course. But Tazzia's challenge to First City's status as a holder in due course turns on First City's lack of good faith.

■ Good faith under U.C.C. § 3–302 is defined by the U.C.C. as "honesty in fact in the conduct or transaction concerned." N.Y.U.C.C. § 1–201(19). In an action brought by a bank to recover amounts due on an outstanding promissory note, the New York Court of Appeals, noting that this language was intended as a subjective standard, stated:

> the inquiry is not whether a reasonable banker in Chemical's position would have known, or would have inquired concerning the alleged breach by Stanndco of its partnership duties, but rather, the in-

---

**2.** The Counter–Affirmation is in response to First City's Affirmation which attempts to prove that the $35,000.00 of proceeds of the Note were transferred into Texoma's account at the Bank.

**3.** If Tazzia establishes that First City is not a holder of the Note in due course, First City will be subject to all claims and defenses against payment on the Notes available pursuant to N.Y.U.C.C. § 3–306, which provides:

> Unless he has the rights of a holder in due course any person takes the instrument subject to

> (a) all valid claims to it on the part of any person; and
> (b) all defenses of any party which could be available in an action on a simple contract; and
> (c) the defenses of want or failure of consideration, non-performance of any condition precedent, non-delivery, or delivery for a special purpose. . . .

quiry is what Chemical itself actually knew. If Chemical did not have actual knowledge of some fact which would have prevented a commercially honest individual from taking up the instruments, then its good faith was sufficiently shown.

*Chemical Bank v. Haskell,* 51 N.Y.2d 85, 432 N.Y.S.2d 478, 480, 411 N.E.2d 1339 (1980). Under this subjective standard, the existence of bad faith turns on whether the holder of the note—the bank—knew that the transaction was suspect. *Sundsvallsbanken v. Fondmetal, Inc.,* 624 F.Supp. 811, 817 (S.D.N.Y.1985). As the Court ruled in *Scarsdale Nat. Bank & Trust Co. v. Toronto–Dominion Bank,* 533 F.Supp. 378, 386 (S.D.N.Y.1982):

> Bad faith, then, represents more than a failure to observe reasonable commercial standards.... [T]he circumstances of which the holder is aware must be such that the failure to inquire signals a desire to evade knowledge because of a belief or fear that the inquiry would reveal a defense. (Citation omitted).

Where well-pleaded allegations of bad faith place the subjective knowledge of the holder at issue, summary judgment is rarely appropriate before the opposing party has been given the opportunity to discover what the holder knew at the time it took possession of the note. *See A. David Schwartz, M.D., P.C. Pension Trust v. Mastercraft Indus., Inc.,* 114 A.D.2d 946, 495 N.Y.S.2d 211, 213 (2d Dep't 1985).

■ There is little in the record at this stage of the proceedings to support Tazzia's allegations of bad faith in terms of the Bank's release of the proceeds of the Note into the Partnership's account. For one thing, the Counter–Affirmation is unsupported by affidavits or documents of any kind, including evidence which shows that the bank had knowledge of Texoma's financial instability. Unsupported assertions in an affidavit sworn by an opposing party's attorney who lacks personal knowledge of the facts do not create genuine issues of material fact that require a denial of summary judgment. *United States v. Potamkin Cadillac Corp.,* 689 F.2d 379, 381 (2d

Cir.1982). Further, this Circuit has held that "[o]nce a moving party has made a showing that no material issues of fact are in dispute, mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion," *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985). A litigant opposing summary judgment must give some affirmative indication that his version of the facts is not fanciful. *Ronald Litoff, Ltd. v. American Express Co.,* 621 F.Supp. 981, 984 (S.D.N.Y.1985), citing *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980).

■ Tazzia has not offered any evidence or support of his accusation that First City acted in bad faith in accepting the Note, but the facts recited raise an issue concerning the release of the proceeds of the Note into the Partnership's account. According to Tazzia, the Note was in default, and the underlying partnership had been dissolved. An issue may thus be raised as to whether at that point, First City was a holder in due course.

In addition, this court has recently denied motions for summary judgment by First City in two similar cases in which the Bank is attempting to collect on promissory notes executed by investors in limited partnerships gone awry. *See First City Federal Savings Bank v. Bhogaonker et al.,* 684 F.Supp. 793 (S.D.N.Y.1988); *First City Federal Savings Bank v. Dennis et al.,* 690 F.Supp. 221 (S.D.N.Y.1988). In *Bhogaonker,* a payment of 10 percent of the proceeds of the loans had been paid directly to National Capital Corporation ("NCC"), and the record did not indicate that the investors had authorized such payment or had ever been informed of the relationship, if any, between NCC and the Bank. Because of the possibility that the 10 percent payment to NCC was, in effect, an undisclosed increase in the interest rate charged to the investor, summary judgment was denied with leave granted to renew after further discovery concerning the relationship between NCC and the Bank. Similarly, in *Dennis,* the possibility that a payment of 5 percent of proceeds to NCC was

an undisclosed increase in the interest rate charged to defendants led to the denial of summary judgment, and again leave was granted to renew after discovery on the relationship between First City and NCC took place.

Here, also, a payment of 10% of the proceeds of the loans was paid directly to NCC, as seen in the May 5, 1988 Affirmation of Gayle S. Sanders, attorney for the Bank.[4] And, again, there is no indication in the record that Tazzia knew about or authorized this payment to NCC. Thus, the record does not indicate whether or not the relationship between NCC and First City was disclosed to Tazzia. This apparent absence of any provision in the Note, the Borrower's Letter or the Security Agreement for payment of 10% of the proceeds from Tazzia's loan to the NCC again raises the issue of First City's good faith.

■ As in *First City Federal Savings Bank v. Bhogaonker et al.*, 684 F.Supp. 793 (S.D.N.Y.1988), this court takes judicial notice of a sworn statement that has been submitted in another group of lawsuits before this court in which First City seeks payment on promissory notes issued in connection with an unrelated limited partnership. *See* certification of Richard Gipe, filed in connection with Defendants' Motion to Dismiss in *First City Federal Savings Bank v. Burk Dennis, et al.*, 690 F.Supp. 221 (RWS), in which it was asserted that NCC is the "alter ego" of First City and that the two companies share office space and employees. Although not presented in the course of submissions on the instant motion, this factual assertion may permit the inference that the 10% payment to NCC was, in effect, an undisclosed increase in the interest rate charged to the defendants.

First City's papers do not address the relationship between itself and NCC or the transfer of funds to NCC, since these issues were not raised by Tazzia. Thus, a genuine issue of fact remains unresolved

as to the extent, if any, of First City's "actual knowledge of some fact which would prevent a commercially honest individual from" accepting the Note or paying over its proceeds. *See Chemical Bank v. Haskell*, 432 N.Y.S.2d at 480, 411 N.E.2d at 1341.

Based on the findings and conclusions set forth above, an issue of material fact exists as to whether First City is a holder of the Note in due course. Therefore, the motion for summary judgment is denied at this time with leave granted to renew the motion after the parties have been given the opportunity to conduct additional discovery to address the issue discussed above.

*Motion for Change of Venue*

Defendant Tazzia's motion to change venue is based upon 28 U.S.C. § 1404(a), which states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought.

The burden of establishing that there should be a change of forum under § 1404 is on the defendant-movant. *Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455; *Troyer v. Karcagi*, 488 F.Supp. 1200 (S.D.N.Y.1980). Factors to consider in determining whether defendant has met his burden include:

> (1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice....

*Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y.1967) (footnotes omitted).

---

**4.** Ms. Sanders' Affirmation annexes as "Exhibit A" a document headed "Request for Funds" which includes a handwritten note: "NCC Fee/5,250." Because the total amount deposited in Texoma's account, according to the doc-ument, was $52,500.00, the NCC fee represents 10% of the monies going to Texoma (the Affirmation explains that $35,000.00 of the $52,-500.00 was the proceeds for Tazzia's Note).

■ The burden on a defendant-movant to establish that a case should be heard in another forum is heavy, for a plaintiff's choice of forum is accorded considerable weight, "and will not be disturbed except upon a clear-cut showing that convenience and justice for all parties demands that the litigation proceed elsewhere." *Gonzalez v. St. Margaret's House Housing Dev. Fund,* 668 F.Supp. 187 (S.D.N.Y.1987), *aff'd* 848 F.2d 391 (2d Cir.1988), *citing Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Indeed, the Supreme Court has stated that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert, supra,* at 508, 67 S.Ct. at 843. Thus, " '[a]bsent a clear and convincing showing' that the balance of convenience strongly favors the ultimate forum, discretionary transfers are not favored. Where the balance of convenience is in equipoise, plaintiff's choice of forum should not be disturbed." *Ayers v. Arabian American Oil Co.,* 571 F.Supp. 707, 709 (S.D.N.Y. 1983).

■ Tazzia has failed to meet his burden of establishing the need for a change of venue. Tazzia contends that Michigan is the appropriate forum for this dispute primarily because significant events leading to the claim, including the signing and execution of the Note, were in Michigan. Tazzia also points out that correspondence concerning the agreements is located in Michigan. In addition to this, Tazzia argues that all of the witnesses he intends to call—the majority of whom are hostile—are in Michigan, as are third-party defendants. These witnesses will testify as to the supposed release of Tazzia from his obligations under the Note and their admission that they agreed to take over loan payments. Finally, Tazzia contends that his business will be disturbed if he is required to defend this action in New York.

First City, in opposition, points out that the loan was reviewed and processed in New York, and that files and documents associated with the review are in New York. Further, the Bank plans to call as witnesses Harvey R. Hirschfeld, Executive Vice President of NCC, who will testify with respect to NCC's review and processing of Tazzia's application, and Richard Greenberg, President of the Bank ("and/or other Bank officers or employees"), who will testify with respect to the Bank's evaluation of the loan. Finally, the Bank also argues that its claims against Tazzia are separate and distinct from Tazzia's claims against the third party defendants.

Based on this examination, it appears that the measure of convenience to parties, witnesses, and sources of proof do not weigh heavily on one side or the other. In such a case, plaintiff's choice of forum will be respected. This choice is further supported by the fact that under the terms of the Note, New York law will govern this dispute, and presumably, courts in New York are more familiar with New York substantive law than are courts in Michigan. *See Troyer v. Karcagi,* 488 F.Supp. at 1207. Thus, based on the findings and conclusions set forth above, Tazzia's motion for a change of venue is denied.

It is so ordered.