**ORIX CREDIT ALLIANCE, INC., Plaintiff,**

v.

**MID–SOUTH MATERIALS CORPORATION, Pavement Planing, Ltd., C & F Contracting Co. Inc., John B. Pittman and Merrill E. Johnston, Defendants.**

**No. 92 Civ. 4972 (RWS).**

United States District Court, S.D. New York.

March 19, 1993.

---

Lewis M. Smoley, Orangeburg, NY, for plaintiff.

Hughes Hubbard & Reed, New York City, for defendants Merrill E. Johnston and John B. Pittman; John G. McCarthy, of counsel.

Phelps Dunbar, by David W. Mockbee, Jackson, MS.

## OPINION

SWEET, District Judge.

Defendants John B. Pittman ("Pittman") and Merril E. Johnston ("Johnston") have moved to dismiss the complaint of Orix Credit Alliance, Inc. ("Orix")[1] for lack of subject matter jurisdiction pursuant to Rule 12(b)(2), F.R.Civ.P., or in the alternative, to transfer this action from the Southern District of New York to the Northern District of Mississippi pursuant to 28 U.S.C. § 1404(a). For the reasons given below, this motion is hereby denied.

*Prior Proceedings*

In 1981 in the state of Mississippi, Pittman and Johnston became incorporators and minority stock holders of C & F Contracting Co., Inc. (C & F) together with W.G. Cook, Jr. ("Cook"), majority stock holder and President of C & F. In 1983, Cook formed another Mississippi construction company, Pavement Planing Ltd. ("PPL"), again enlisting Pittman and Johnston as minority interest holders. In 1984, Cook expanded into the business of running both a gravel pit in northern Mississippi and a washing plant for it, and created Mid–South Materials Corporation (Mid–South), currently a defendant in this action. As with C & F, Cook was President of Mid–South and majority shareholder, and Pittman and Johnston were minority stockholders.

Mid–South was incorporated on July 16, 1984, by Cook, Pittman and Johnston. Part of the financing for Mid–South was secured through four separate notes executed in favor of Orix, which has previously extended credit to C & F. Orix secured its loan with security agreements and personal guaranties, and on September 26, 1984, Pittman and Johnston signed the originals of the Guaranty Agreements (the "Guaranties") at issue in this case. These identical guaranties provide that Pittman and Johnston are personally liable for "the payment of *any and all debts* of [Mid–South] of whatever nature ... whether now or hereinafter existing or arising...." (emphasis added). According to the Guaranties, each guarantor would appoint an agent for service of process in New York and would agree to the exercise of jurisdiction of New York courts under a forum-selection clause which states that "the undersigned do[es] hereby agree to the venue and jurisdiction of any court in the State and County of New York regarding any matter arising hereunder." The agreement also states that "[t]his instrument cannot be changed orally, shall be interpreted according to the laws of the State of New York, and shall" survive the death of the Guarantor.

---

1. At the time it first extended credit guaranties by the defendants, Orix was called Credit Alliance Corporation (CAC), later First Interstate Credit Alliance, Inc. (FICAI), and finally Orix

Credit Alliance. It has always been a New York corporation, although it has recently moved its headquarters to Secaucus, New Jersey.

Both Pittman and Johnston allege they neither negotiated nor participated in any of the financing arrangements with Orix which led to the execution of the Guaranties. Pittman and Johnston sold their interests in Mid–South on July 24, 1985, in partial consideration for an indemnification and "hold harmless" agreement from Mid–South and C & F. They sold their stock in C & F and their interests in PPL in 1985, and by letter dated August 19, 1985, Cook wrote Orix requesting that it release them from their continuing guaranties on behalf of C & F. He did not mention Mid–South in the letter, which he now states was due to an oversight (Cook Aff. at 4). Pittman and Johnson also allege that they received the originals of their Guaranties after a telephone conversation with Orix assured them that they had no further liability to Orix under any personal guaranty.

Cook received more credit from Orix for equipment for Mid–South in August, 1987, in exchange for a promissory note of $1.6 million. Orix took a security interest, labeled a mortgage by the parties, in the equipment. The company Mid–South itself executed a Guaranty (the "Cook Guaranty") of all the obligations then existing or thereafter personally incurred by its president, Cook. Cook executed two more Promissory Notes for Mid–South for equipment added to Orix's security agreement: the first for $248,760 (August 29, 1988), and the second for $400,-054.78 (April 27, 1989). Cook also guaranteed all of the obligations of PPL to Orix on June 12, 1989, a guaranty which Orix now could enforce directly against Mid–South as a result of the Cook Guaranty. Despite the additional financing, however, business did not go well: Mid–South and PPL filed for protection under Chapter 11 of the United States Bankruptcy Code on November 3, 1989, and subsequently were liquidated under Chapter 7.

Orix repossessed Mid–South's and PPL's equipment and sold all at a public auction on April 26, 1990. After the sale of Mid–South's equipment, Orix sued that company for a deficiency of $1,181.16, plus interest. After the sale of PPL's equipment, however, Orix brought suit in diversity in the Southern District of New York for a deficiency of $255,513.70 plus interest—a sum guarantied by Cook, whose debts were guarantied by Mid–South, whose debts in turn were guarantied by Pittman and Johnston.

As defenses in the underlying action, Pittman and Johnston allege that they were released from their guaranties and that the auction sale price of PPL's equipment was commercially unreasonable. They have moved for dismissal due to lack of subject-matter jurisdiction, or at least a transfer of this action to Mississippi under 28 U.S.C. § 1404(a).

### Discussion

The contacts of Orix with this jurisdiction, the choice by the parties of New York law to govern the transaction, and the permissive forum-selection clauses unquestionably give this court both subject-matter jurisdiction and venue. The defendants' motion to transfer for "lack of venue" is really closer to an argument of "forum non conveniens": they essentially allege that the court should transfer this action because Mississippi would be a *better* forum for a variety of reasons than New York.

Orix responds with two arguments: first, that the forum selection clause is binding; second, that even if it is not, the equally balanced convenience of the parties, the presumption in favor of the forum chosen by the plaintiff, and the public policy of New York all tilt in favor of retaining this action in New York. This Court shall examine each factor in turn.

### Forum–Selection Clause

■ Although defendants Pittman and Johnston allege that the forum selection clauses in the Guaranties does not represent a valid contract between the parties since the defendants neither read nor negotiated them, this argument is without merit. The law in New York, like the law in many jurisdictions, requires parties to read the documents they sign. *Leasing Services Corp. v. Graham*, 646 F.Supp. 1410, 1415 (S.D.N.Y.1986); *British West Indies Guaranty Trust Co. v. Banque Internationale A Luxembourg*, 172 A.D.2d 234, 567 N.Y.S.2d 731, 732 (1st Dep't 1991);

*DiRuocco v. Flamington Beach Hotel & Casino, Inc.,* 163 A.D.2d 270, 557 N.Y.S.2d 140 (2d Dep't 1990). Absent a showing of bad faith or fraud (neither of which are alleged here), a forum selection clause need not be negotiated to be binding. *Carnival Cruise Lines v. Shute,* — U.S. —, — – —, 111 S.Ct. 1522, 1527–28, 113 L.Ed.2d 622 (1991). Defendants' arguments that they should not be held liable under their Guaranties since they neither negotiated nor participated in any of the financing arrangements with Orix which led to the execution of their guaranties is likewise unavailing under *Carnival.*

■ The real question is what weight the Court should give to this particular contract allowing for a New York forum for the parties' dispute. It must be noted at the outset that courts in New York have consistently held that forum selection clauses are *prima facie* valid absent a showing they was signed as a result of fraud or overreaching, that they are unreasonable or unfair, or that enforcing them would contravene a strong public policy of the forum. *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972); *General Electric Credit Corp. v. Toups,* 644 F.Supp. 11, 13 (S.D.N.Y.1986) (Sweet, D.J.). *The Bremen,* however, is an admiralty case; and while it may prove "instructive" in resolving the parties' dispute, the factors for deciding transfer as set out in § 1404(a) control a federal court sitting in diversity jurisdiction. *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 28–29, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988). A motion to transfer under § 1404(a) is governed by the terms of the statute itself, and a court should consider the preferences of the parties, as embodied in a contractual forum selection clause, only to the extent that the federal statute itself permits. *Red Bull Assoc. v. Best Western Int'l., Inc.,* 862 F.2d 963, 966–67 (2d Cir.1988) (denying effect to mandatory forum-selection clause because of strong public policy of civil rights law).

■ However, clauses establishing *ex ante* the forum have the salutary effect of dispelling any confusion about where suit may be brought (*Carnival,* — U.S. at —, 111 S.Ct. at 1527), and if the venue chosen is proper and both parties expect the clause to be binding, the contract by its terms should be enforced. *See Paribas Corp. v. Shelton Ranch Corp.,* 742 F.Supp. 86, 90 (S.D.N.Y. 1990) (enforcing contract stating that disputes shall be adjudicated in New York courts).

■ Here the terms are not mandatory, however, and therefore this agreement should be given less weight under § 1404(a) than an agreement phrased in more compelling terms. The language in the Guaranties merely states that Pittman and Johnston *agree* to the jurisdiction of a court located in the state and county of New York, not such a court *shall* have jurisdiction nor that it would be the exclusive forum for all disputes arising out of this contract. New York law makes a clear distinction between permissive forum-selection clauses and mandatory clauses, and only a mandatory clause should prevent a court from ordering a change of venue absent a strong countervailing consideration, such as the Congressional policy in favor of civil rights enforcement considered by the court in *Red Bull.* This distinction between "permissive" and "mandatory" clauses was the law in New York even before the Supreme Court decided *Ricoh. See Leasing Services Corp. v. Patterson Enterprises,* 633 F.Supp. 282, 284 (S.D.N.Y.1986); *Credit Alliance v. Crook,* 567 F.Supp. 1462, 1465 (S.D.N.Y.1983) ("Cook declared nothing more than her consent to the venue and jurisdiction of a court which might otherwise not exist").

■ The language in these Guaranties is nothing more than a "jurisdiction-conferring clause which, although providing a plaintiff with a guaranteed forum, does not deprive him of the right to sue in another having personal jurisdiction over the defendant." *AVC Nederland B.V. v. Atrium Inv. Partnership,* 740 F.2d 148, 155 (2d Cir.1984). Nothing in the Guaranties precludes Orix from bringing suit in Mississippi; nothing in them precludes this Court from transferring the action there, as a result of the balancing of factors prescribed by *Ricoh* and the permissive wording of the clause itself.

### Transfer Pursuant to § 1404(a)

The defendants' motion to change venue is based upon 28 U.S.C. § 1404(a), which states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought.

A district court has broad discretion to decide transfer according to individualized considerations of convenience and fairness (*Red Bull*, 862 F.2d at 967), although the party seeking transfers bears the burden of establishing its propriety, *Citicorp. Int'l. Trading Co. v. Western Oil & Refining Co.*, 708 F.Supp. 86, 89 (S.D.N.Y.1989). The factors relevant in determining whether the defendants have satisfied their burden include the convenience to the parties, the convenience to the witnesses, the ease of access to sources of proof, the availability of process to compel the attendance of unwilling witnesses, the forum's familiarity with the law governing the case, and the "interests of justice"—a term broad enough to cover the particular circumstances of the case. *Red Bull*, 862 F.2d at 967; *Patterson*, 633 F.Supp. at 284 (citations omitted); *Don King Productions, Inc. v. Douglas*, 735 F.Supp. 522, 533 (S.D.N.Y.1990) (Sweet, D.J.).

■ The parties' expressed preference for a particular venue is one of these factors (*Ricoh*, 487 U.S. at 29, 108 S.Ct. at 2243) and although a permissive forum clause is entitled to less weight than a mandatory one, the fact that both parties initially accepted the jurisdiction of the courts of New York must count. A forum selection clause is determinative of the convenience to the parties, *see Richardson Greenshields Securities, Inc. v. Metz*, 566 F.Supp. 131 (S.D.N.Y.1983) (Sweet, D.J.); *General Elec. Credit Corp. v. Toups*, 644 F.Supp. 11, 15 (S.D.N.Y.1986) (Sweet, D.J.) (permissive forum clause still determinative of parties' convenience).

■ But the convenience of the parties is only one factor under *Ricoh*. Other factors, such as the convenience of non-party witnesses or the availability of records, may count for more. The defendants have offered to produce Cook, Frank P. Thiel, and Donald L. Glenn, all Mississippi residents who are unwilling to travel voluntarily to New York (so the defendants aver), to testify that the Guaranties do not extend to the third-party debts of Mid–South and to testify that the terms of the Guaranties did not extend to more than Mid–South's own security interests, that the defendants were released from their Guaranties by Cook's letter, and that the sale price of PPL's equipment was "commercially unreasonable."

The contractual issues in the first two arguments are closer to *Orix v. Beltway*, 89 Civ. 0279, slip. op., 1989 U.S.Dist.Lexis 1119 (S.D.N.Y. Sept. 18, 1989) (Walker, D.J.) than to *Leasing Service Corp. v. Patterson Enterprises*, 633 F.Supp. 282 (S.D.N.Y.1986) (Walker, D.J.), relied on by the defendants. In *Patterson*, after proceeds from an auction of equipment repossessed pursuant to a security interest (and which the lender had ordered repaired and refurbished prior to sale) did not cover the outstanding debt, the lender sued for a deficiency judgement which included the costs of repairing and refurbishing the equipment. The court would have denied the defendants' motion for transfer from New York to their jurisdiction but stated that:

> Tipping the scales in favor of transfer, however, are those witnesses identified by Patterson as Mississippi residents.... who may have significant and material information regarding the condition of the equipment prior to sale and necessity of repairs.

*Patterson*, 633 F.Supp. at 285.

The claim that the sale of PPL's equipment was "commercially unreasonable" is the last of the defendants' arguments and does not form the core of their case. The defendants do not even mention it in their initial memorandum of law to dismiss. Their most important arguments are that the "arising under" language in the Guaranties refers only to those "security obligations" designated in the documents as the inducement for the guaranty, not to third-party debts which did not directly benefit Mid–South, and that they were released from their Guaranties by all parties. Whatever the strengths or weaknesses of these arguments, the proof should rely more on documentary and admissible

parol evidence than descriptions of the repairs of a machine would.

Defendants' contractual claim resembles much more closely the claim made by defendants in *Beltway*, 89 Civ. 0279, slip. op., 1989 U.S.Dist.Lexis 1119 (S.D.N.Y. Sept. 18, 1989) (Walker, D.J.), decided three years after *Patterson*. In *Beltway*, the defendant alleged that, pursuant to a settlement, he was liable only for a fixed and limited "maximum first loss liability." Plaintiffs alleged that the defendant was liable for the full value of the guaranty, since he had not paid the limited sum within fifteen days of notice of deficiency as provided for in the Guarantee. The court, following *Ricoh*, found that a permissive forum selection clause identical to the one at bar was "not dispositive, but a significant factor" which "weighs heavily against transfer," at *7 & *9. As for the convenience of witnesses, the Court repeated in *Beltway* what it had already held in *Patterson*: that the availability of witnesses who could testify about "the validity of documents, the existence of the debt, and compliance with law" was equally divided between the plaintiffs and the defendants, and that "[t]his balanced inconvenience alone would not justify a § 1404(a) transfer." *Patterson*, 633 F.Supp. at 285. Although the defendants have alleged that all of their witnesses reside in Mississippi, they have not shown how they will be prejudiced by presenting the testimony of these witnesses through depositions.

Orix has stated that its records of the transactions are kept in its headquarters close to New York city. It has also stated that the more than two million ultimately loaned to Mid–South and its related companies required the approval of the managers in the New York office, even if the defendants dealt with the office in Georgia. It is likely that their approval, along with Orix's documents and other evidence, will be submitted as the substance of Orix's understanding of all contracts with Mid–South and its principals.

The fact that significant events leading to the signing of the Guaranties occurred in Mississippi does not justify a transfer. In *First Federal Sav. Bank v. Tazzia*, 696 F.Supp. 904 (S.D.N.Y.1988) (Sweet, D.J.), this court denied a motion to transfer based on facts similar to this case. The defendant argued that he had been promised indemnification and released from obligations under a note due to the plaintiff. Although the defendant alleged that "all of the witnesses he intends to call—the majority of whom are hostile—are in Michigan, as are third-party defendants," and that live testimony about his release was required, the court held that transfer was not justified. *Tazzia* is more apposite than the cases cited by the defendants. *See Credit Alliance Corp. v. Crook*, 567 F.Supp. 1462 (S.D.N.Y.1983) (cross-defendants and one plaintiff with offices in California justified transfer); *Coface v. Optique du Monde, Ltd.*, 521 F.Supp. 500, 510 (S.D.N.Y.1980) (balance of factors justified transfer, for "any testifying Coface representative would likely come from France.")

Finally, New York state policy and the application of New York law mitigates against transfer. The parties agreed that their contracts are governed by New York law, and a diversity case should be tried in the "forum that is at home with the state law that must govern the case." *Ferens v. John Deere Co.*, 494 U.S. 516, 530, 110 S.Ct. 1274, 1283, 108 L.Ed.2d 443 (1990), *quoting Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). New York State amended its General Obligations Law in 1984 "to indicate a strong policy in favor of choice of law and choice of forum provisions," *Bank of America v. Envases Venesolanos, S.A.*, 740 F.Supp. 260, 264 (S.D.N.Y.1990). The statute applies to contracts worth over $250,000 entered into after July 19, 1984; as defendants admit, the Guaranties are dated September 26, 1984 (Pl. reply mem. at 2).

The defendants have cited no interests of justice comparable to those at stake in *Red Bull* nor any remaining considerations which counter this analysis. Since the measure of convenience to parties, to witnesses, and to sources of proof are equally balanced, and the factors of choice of law and choice of forum weigh in favor of New York, Orix's choice to sue in this jurisdiction will be respected.

## Conclusion

For the reasons stated above, defendants' motion to dismiss the complaint for lack of personal jurisdiction and to change venue are denied.

It is so ordered.