LaCORTE ELECTRICAL CONSTRUCTION & MAINTENANCE, INC., Plaintiff,

v.

CENTRON SECURITY SYSTEMS, INC., Defendant.

No. 95–CV–363.

United States District Court, N.D. New York.

Aug. 14, 1995.

Hiscock & Barclay, L.L.P., Albany, NY (Dena T. Amodio, of counsel), for plaintiff.

McNamee, Lochner, Titus & Williams, P.C., Albany, NY (David J. Wukitsch, of counsel), for defendant.

HURD, United States Magistrate Judge.

### MEMORANDUM DECISION AND ORDER

This is a contract action carrying diversity of citizenship and involves questions of long-arm jurisdiction. Defendant, Centron Security Systems, Inc. ("Centron"), has moved this court for a transfer to the Western District of Kentucky, pointing to that venue as a more convenient and appropriate forum.

### FACTS

Plaintiff LaCorte Electrical Construction & Maintenance, Inc. ("LaCorte"), a New York corporation with its principal place of business in Troy, New York, allegedly entered into a primary contract in October 1992, with the Regional Airport Authority of Louisville & Jefferson Counties in Kentucky, for the implementation of a card access secu-

rity system for the airport. LaCorte in turn, subcontracted with Centron in November 1992, for the provision of training, testing, and equipment associated with the card security system. Centron, a New Jersey corporation with its principal place of business in Holiday, Florida, is certified to do business in New York.[1] It has no offices, stockholders, officers, directors, employees, agents or representatives in New York, and does not own, use, or possess real property in New York.

It is not clear where the subcontract in question was executed, although negotiations took place in New York in the form of three separate meetings attended by Centron's president, Karen King. The contract's performance, however, played out completely within Louisville, Kentucky.

The subcontract contains a choice of law clause naming New York as its choice. However, the primary contract names Kentucky as the law of choice. Apparently a choice of forum clause was not agreed to by the parties to either contract. An action on a bond brought by Centron in Kentucky contains a choice of forum clause naming the state courts of Kentucky as the forum.[2]

### PROCEDURAL HISTORY

Plaintiff originally commenced this action in New York State Supreme Court, County of Rensselaer, on February 21, 1995, alleging breach of subcontract, breach of warranty, and negligence in failing to perform. On March 17, 1995, pursuant to 28 U.S.C. 1441 and 1446, Centron served and filed a notice of removal to this court on the basis that complete diversity of citizenship exists between plaintiff (a New York corporation) and itself, and that the amount in controversy exceeds $50,000. The filing and service of an amended complaint was made by LaCorte on May 15, 1995, and an answer by Centron on May 24, 1995.

On June 14, 1995, Centron itself brought action on a payment bond in the Western District of Kentucky claiming failure on the part of LaCorte to pay for "extra work"

---

1. Centron allegedly applied for certification when bidding on a job for the Albany County Airport.

2. Note that the action brought in Kentucky on the bond was brought in federal court, and not the chosen forum of state court.

required of, and performed by Centron.[3] This action is against Insurance Company of North America as the surety on the project. Two days later, on June 16, 1995, Centron moved to transfer this action to the Western District Court of Kentucky pursuant to 28 U.S.C. § 1404(a). It is this motion upon which we now focus.

## JURISDICTION

■ Centron, as a corporation of New Jersey, may be subjected to the jurisdiction of this court if elements of New York's long-arm statute are met. It is well settled that the District Court borrows the long-arm statute of the forum. Fed.R.Civ.P. 4(e); *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.,* 983 F.2d 551 (3d Cir.1993); *Leasco Data Processing Equip. Corp. v. Maxwell,* 468 F.2d 1326 (2d Cir.1972). Therefore, when determining the application of a state's long-arm statute in a diversity action, it is the state law on the issues of interpretation that is controlling. In this case, Civ.Pract.L. & R. § 302 is the New York State long-arm statute.

■ CPLR § 302(a)(1) sets out as one method of obtaining jurisdiction over a non-domiciliary, a "transaction of business" doctrine. This doctrine "authorizes the court to exercise jurisdiction over nondomiciliaries for tort and contract claims arising from a defendant's transaction of business in this State." *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198, 522 N.E.2d 40, 43 (1988); *see also Paribas Corp. v. Shelton Ranch Corp.,* 742 F.Supp. 86, 91 (S.D.N.Y.1990). Section 302(a)(1) provides in pertinent part:

(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, ... who ...

(1) transacts any business within the state.

N.Y.Civ.Pract.L. & R. § 302(a)(1) (McKinney 1990).

The New York Court of Appeals explained the concentration of contacts sought by this statute, stating:

It is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.

*Kreutter,* 71 N.Y.2d at 467, 527 N.Y.S.2d at 198, 522 N.E.2d at 43.

In the instant case, Centron, through its president Karen King, has visited Troy, New York, on three occasions to negotiate the very contract at issue in this litigation. While it is not clear that these visits entailed the actual execution of the contract, the contract's formulation was involved. These visits were part of contract negotiations. "[C]ontract negotiations evidencing a purposeful invocation of the laws of the forum state are transactions of business for purposes of the [New York State] long-arm statute. It does not matter whether the negotiations are preliminary, or whether the contract is executed in New York, or whether performance is contemplated for New York." *Bastille Properties, Inc. v. Hometels of America, Inc.,* 476 F.Supp. 175, 177 (S.D.N.Y.1979); *see also Firegreen Ltd. v. Claxton,* 160 A.D.2d 409, 411, 553 N.Y.S.2d 765, 767 (1st Dep't 1990) (denial of motion to dismiss for lack of jurisdiction even though only contact with state was one two-hour meeting, because "it appears that jurisdiction may be exercised simply on the basis of the defendant having been present in the State during the time that the contract was made."); *see also Leiderman Assoc. v. Robotool Ltd.,* 154 A.D.2d 515, 546 N.Y.S.2d 137 (2d Dep't 1989) (refusal to find jurisdiction where testimony refuted contention that single meeting involved negotiation of some or all of terms of contract).

Add to these already sufficient contacts that Centron possesses a certificate of authority to do business in New York State.

**3.** The "extra work" was allegedly the result of a series of lightning strikes in Kentucky causing damage to the system.

"Although the mere authorization to do business, even though granted at a corporation's request, may not be conclusive on the issue of jurisdiction under New York Civ.Pract.L. & R. § 301, it is certainly very strong evidence that the corporation is subject to in personam jurisdiction." *Beja v. Jahangiri,* 453 F.2d 959, 962 (2d Cir.1972); *see also Amalgamet, Inc. v. Ledoux & Co.,* 645 F.Supp. 248, 249 (S.D.N.Y.1986); *Augsbury Corp. v. Petrokey Corp.,* 97 A.D.2d 173, 176, 470 N.Y.S.2d 787, 790 (3d Dep't 1983) ("The privilege of doing business in New York is accompanied by an automatic basis for personal jurisdiction").

Finally, in the subcontract, the defendant has agreed that all terms of the subcontract are subject to interpretation through the laws of New York State. Although a clause agreeing that contract interpretation will be subject to New York law will not grant jurisdiction, per se, "the existence of such a provision ... has been cited by a New York court as one of several factors relevant to the creation of a nexus with New York for purposes of jurisdiction." *Chemco Int'l. Leasing, Inc. v. Meridian Engineering, Inc.,* 590 F.Supp. 539, 543 (S.D.N.Y.1984) (referring to *Income Fund of Boston, Inc. v. F.H. Vahlsing, Inc.,* 49 A.D.2d 724, 372 N.Y.S.2d 658 (1st Dep't 1975)); *see also McShan v. Omega Louis Brandt et Frere, S.A.,* 536 F.2d 516, 518–19 (2d Cir.1976).

Given the defendant's certificate of authorization to do business, the negotiations in New York State, and the defendant's agreement to submit their contract to New York State law, it is clear then that this court has personal jurisdiction over the defendant sufficient to satisfy state law requirements and constitutional due process.

It is likewise clear that the Western District of Kentucky holds personal jurisdiction over these parties. Again looking to the long-arm statute of the state, Kentucky Revised Statute § 454.210 provides the following:

> (2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from any person's:
>
> 1. Transacting any business in this Commonwealth.
>
> 2. Contracting to supply services or goods in this Commonwealth.

K.R.S. § 454.210(2)(a); *see also Commonwealth Dep't of Education v. Gravitt,* 673 S.W.2d 428, 431 (Ky.Ct.App.1984) (a Philadelphia, Tennessee corporation was clearly subject to jurisdiction under either subsection based upon a contract with domiciliary party). LaCorte contracted with the Regional Airport Authority of Louisville & Jefferson Counties in Kentucky and provided them with a security system on site. Centron, while not contracting with a Kentucky domiciliary, also provided services in that forum according to the subcontract with LaCorte.[4] Both are clearly subject to the jurisdiction of the Western District of Kentucky.

### *DISCUSSION*

Jurisdiction thus existing in both New York and Kentucky, the issue of this motion falls not upon whether this forum holds jurisdiction over defendant for the purposes of this case, but rather whether a more convenient forum exists.[5] Centron seeks transfer to what they argue is a more convenient forum under 28 U.S.C. § 1404.[6] "It is well established in this circuit that on a motion to transfer venue, the movant bears the burden of establishing that a change of

---

4. Note also that since Centron brought a motion to transfer to that forum, they have consented to jurisdiction there. *Grossman v. Wal–Mart Stores, Inc.,* 682 F.Supp. 752 (S.D.N.Y.1988).

5. The discussion if confined to the issues of convenience and fairness, since New York is a proper venue for this action in diversity via 28 U.S.C. § 1391. Centron is certified to do business in this state and would be subject to New York long-arm jurisdiction. *See* 28 U.S.C. § 1391(a), (c) (1995) (a corporation's residence for purposes

of venue is that district in which they are subject to jurisdiction at the time the action is commenced; a defendant's residence is always proper venue).

6. Section 1404 states in part:

> a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

venue is warranted." *Gilbert v. Wilson,* 821 F.Supp. 857, 860 (N.D.N.Y.1993). Considerations for the court to consider include: (1) the convenience to parties; (2) the convenience to witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) practical problems that make trial of a case easy, expeditious, and inexpensive; and (7) the interest of justice. *Id.,* at 861. LaCorte's choice of venue is entitled to great weight. It "will not be disturbed except upon a clear-cut showing that convenience and justice for all parties demands that the litigation proceed elsewhere." *First Federal Savings Bank v. Tazzia,* 696 F.Supp. 904 (S.D.N.Y.1988).

■ LaCorte argues that New York holds a significant nexus to the subcontract through precontract negotiations held in New York; through phone calls, faxes and letters sent either to or from New York; and through Centron's certification to do business in New York. Additionally they note that New York's law has been chosen to control in this subcontract.

Centron seeks transfer of this action based upon a number of arguments, including the convenience of nonparty witnesses, the location of physical evidence, the law applicable to the case, and the existence of a companion action focusing upon the same facts as the instant action.

Focusing on each in turn, Centron primarily posits that nonparty witnesses would be particularly disadvantaged. They believe that the time and efforts expended by those witnesses—not to mention those of the parties and the court—in discovery, depositions, and trial testimony would be significantly diminished by a transfer. "When a party seeks a transfer based on convenience of witnesses pursuant to § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of their testimony." *Gilbert,* 821 F.Supp. at 861. Centron has attempted to fulfill such an obligation with a list contained in its reply. Centron lists Robert May, Robert Brown, J. Pat

Hall, Jim Oney, Jim Lemons, LaDonna Branch, Rande Swann, Dave Winebrenner, H.L. Parks, Thelma Bruce, Maurice Sweeney, and employees from D & F Electrical and Brash & Barry General Contractors as witnesses from the Kentucky area that may be called at trial. Centron briefly explains that these witnesses "will testify concerning facts and circumstances surrounding the work to be performed, installation problems, the damage occasioned by the lightning strike, and the difficulties caused by LaCorte's wrongful refusal to pay amounts due." (Def. Reply at pp. 3–4). Centron furthers that Parks, Bruce and Sweeney "may testify regarding the parties' performance of subcontract and Centron's problems in receiving payment." (Id. at p. 4). Finally, Centron points out that the subcontractors mentioned may testify to system installation and warranties that existed.

This general account of the possible testimony of potential nonparty witnesses with knowledge who may be called to testify, sheds little light on the parties that will testify, or for that matter which testimony is vital to the trial. The court comes away from this account with a shaky confidence that those mentioned were in some way connected to the parties' endeavors at the Louisville Airport, but with little more. The court cannot even rest on the assumption that all of those mentioned embark from the forum so described as more convenient. While Centron describes the list's itemized members as "Kentucky witnesses," the list is prefaced with the less than absolute statement that "a significant number of non-party witnesses reside in or around Louisville, Kentucky." (Id. at p. 3). LaCorte strengthens this concern by pointing out that Michael Finigan who completed the subcontract is located in Louisiana, and representatives of the firm, Receptors, who are familiar with the project are located in California. Furthermore, LaCorte notes that several of the witnesses mentioned by Centron have expressed their willingness to travel to New York to testify for either party.[7]

---

7. Specifically, LaCorte states in its Memorandum in Opposition that Robert Brown, James Lem-

ons, Paul Able and David Winebrenner would be willing to testify in New York.

Centron next raises the location of physical evidence in Kentucky. Specifically they note that the lightning strike and resulting damage all occurred in Kentucky. LaCorte rightly points out however, that a lightning strike and the damage it produced, while factoring into the causation of alleged breaches of the contract, are in fact ancillary to the central issue of the case. Contract disputes rarely call for the presentation of such evidence. While the location of the contract's performance holds bearing on the dispute, the court is not convinced that were this action to play out in the courts of the Western District of Kentucky, either party would be more apt to produce some physical evidence of a lightning strike, damage, or of the alleged incomplete performance. Furthermore, the very nature of the product contracted for—a security system—inhibits its presentation in court far more than its location in another state. Centron has neither directed this court's attention to specific items of physical evidence from Kentucky, nor convinced it of some central importance of such physical evidence in this contract dispute.

Centron next attempts to convince this body of the requirement that Kentucky law apply to this dispute due to its status as the chosen law of the primary contract between LaCorte and the Airport. However, the subcontract at issue herein contains its own seemingly binding choice of law clause that names New York's law as controlling. Centron is right in noting that the applicable law bears on the appropriate forum. "Among the generally recognized factors are ... in diversity suits, which forum state's law will govern the case." *Darby Drug Co., Inc. v. Zlotnick*, 573 F.Supp. 661, 664 (E.D.N.Y. 1983); *see also First Federal Savings Bank v. Tazzia*, 696 F.Supp. 904, 910 (S.D.N.Y. 1988). It is New York law that may apply to this subcontract, however, and not the law of Kentucky. In any event, the court is confident that if necessary, it would be able to apply the law of whichever state is proper.

Finally, Centron notes the existence of the action pending in the Western District of Kentucky between Centron and LaCorte's surety. However, that action was commenced by Centron after the above action. Centron brought the action on a performance bond, enlisted to guard against a failure to compensate Centron's performance. This court sees no apparent need for either a joint trial or consolidation of these two actions. While the two causes of action ostensibly arise from the same factual scenario, the similarities are balanced by several differences. Not only do the parties differ, but the disputes essentially revolve around two separate contracts: the subcontract in this action, and the bond in the other. The subsequent bond action should have little or no bearing upon the venue of this action.

### CONCLUSION

Centron has few contacts with the Northern District. It is not even clear that the contract was entered into in this forum. However, it has not shown that the convenience of witnesses would necessitate a transfer. Defendant has not met their burden of proof in this respect. Defendant's arguments with regard to both physical evidence and choice of law similarly fall short. While it is true that another action is pending in Kentucky, that action was commenced after this action and involves different parties, and while it revolves around the same facts and occurrences, it would not necessarily be joined or consolidated with this action if a transfer were to occur. Discretion applies here and this court deems no necessity in transferring this action.

Accordingly, it is

ORDERED that defendant Centron's motion for transfer to the Western District of Kentucky is **DENIED.**

IT IS SO ORDERED.